UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
CORDIUS TRUST,                          :
                          Plaintiff,    :
                                        :    99 Civ. 3200 (DLC)
              -v-                       :
                                        :    OPINION AND ORDER
ELIZABETH KUMMERFELD, KUMMERFELD        :
ASSOCIATES, INC.,                       :
                          Defendants.   :
                                        :
----------------------------------------X

Appearances:

For Plaintiff:
Bradford. S. Babbitt
James A. Wade
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103

For Respondent Donald D. Kummerfeld:
Paul M. Brown
Walter A. Saurak
Satterlee Stephens Burke & Burke LLP
230 Park Avenue
New York, NY 10169


DENISE COTE, District Judge:

     This action arises out of the efforts of Cordius Trust

("Cordius") to satisfy an April 11, 2000 judgment ("April 2000

Judgment") granting it $1,418,000 plus interest and reasonable

attorneys fees and costs from Kummerfeld Associates, Inc.

("KAI") and Elizabeth Kummerfeld ("Ms. Kummerfeld").  Cordius

seeks to pierce the corporate veil of KAI and attach the assets

of Donald Kummerfeld ("Kummerfeld"), who along with Ms.

Kummerfeld, his wife (together, "the Kummerfelds") are KAI's sole shareholders, officers, and directors. This Court granted Cordius's petition for a writ of execution and turnover proceeding to pierce KAI's veil in an Opinion issued on March 30, 2004, Cordius Trust v. Kummerfeld, No. 99 Civ. 3200 (DLC), 2004 WL 616125 (S.D.N.Y. Mar. 30, 2004) ("March 2004 Opinion"), and entered judgment in favor of Cordius on April 30. Cordius Trust v. Kummerfeld, No. 99 Civ. 3200 (DLC) (S.D.N.Y. Apr. 30, 2004)(entering judgment in favor of plaintiff regarding petition for writ of execution and turnover proceeding to pierce corporate veil) ("April 2004 Judgment"). The Second Circuit Court of Appeals affirmed in part, vacated the order granting the petition, and remanded the matter for further development of the factual record with regards to two questions: whether Kummerfeld used his domination of KAI to injure the plaintiff and whether Cordius suffered injuries that reflect the type of abuse of the corporate form warranting the equitable remedy of piercing the corporate veil. Cordius Trust v. Kummerfeld, 153 Fed. Appx. 761, 763 (2d Cir. 2005) (unpublished summary order) ("Appellate Opinion"). A mandate issued on November 2, 2005.

Cordius and Kummerfeld have both moved for summary judgment on plaintiff's veil piercing claim pursuant to Rule 56, Fed. R. Civ. P. For the reasons set forth below, both motions are denied.

BACKGROUND

The facts at the heart of the instant action and its complex procedural history are set forth in numerous Opinions issued by this Court and the Court of Appeals.[1] Familiarity with these Opinions is assumed. The following facts are taken from the submissions on the instant motion and are undisputed unless otherwise noted.[2]

A. KAI

KAI was formed as a New York subchapter-S corporation in 1985 by Elizabeth and Donald Kummerfeld. The Kummerfelds each

---

[1] See Cordius Trust v. Kummerfeld, No. 00-7444, 2000 WL 1775516 (2d Cir. 2000) (affirming district court judgment in favor of Cordius on breach of promissory note claim); Cordius Trust v. Kummerfeld, No. 99 Civ. 3200 (DLC), 2000 WL 124807 (S.D.N.Y. Feb. 2, 2000) (denying defendants' motion to compel arbitration); March 2004 Opinion, rev'd in part, Appellate Opinion, 153 Fed. Appx. at 763 (granting plaintiff's petition for writ of execution and turnover proceeding to pierce corporate veil); Cordius Trust v. Kummerfeld, No. 99 Civ. 3200 (DLC), 2006 WL 1876677 (S.D.N.Y. July 7, 2006) (denying Kummerfeld's untimely first motion for a jury trial); Cordius Trust v. Kummerfeld, No. 99 Civ. 3200 (DLC), 2006 WL 3544341 (S.D.N.Y. Dec. 8, 2006) (granting Kummerfeld's second motion for a jury trial pursuant to Rules 6(b)(2) and 39(b), Fed. R. Civ. P.).

[2] In support of its motion, Cordius has submitted one declaration authenticating documents. Kummerfeld has submitted his own January 2007 declaration; copies of checks totaling $50,000 to settle a case litigated against KAI, and a declaration authenticating documents. Almost all of the documents submitted by both parties were included in the Joint Appendix presented to the Court of Appeals on appeal of the March 2004 Opinion and April 2004 Judgment.

own fifty percent of KAI's shares.  Since its inception, Ms. Kummerfeld has been the president of KAI and Kummerfeld has served as chairman of the board and treasurer.  KAI marketing materials describe the company as a "diversified financial and investment banking firm" engaged in "financial and management consulting, mergers and acquisitions and strategic investments in new ventures and in growth oriented companies."  The record in the instant motion does not provide evidence that KAI conducted any legitimate, revenue-generating business since 1997.

In 1987, Kummerfeld became president and CEO of Magazine Publishers of America ("MPA"), a magazine publishing trade association.  He held this full-time position until his November 1999 retirement.[3]  According to the terms of his employment agreement with MPA, Kummerfeld was to "discontinue all business activities for or on behalf of [KAI]," except for "occasional consultation" that would not impinge on his MPA duties, while Ms. Kummerfeld was to continue managing the company.  Kummerfeld remained chairman and treasurer of KAI, even after joining MPA. He has testified that after 1997 he was not paid a salary by KAI, was not authorized to write checks on behalf of the

---

[3] After retiring from MPA, Kummerfeld worked as a consultant in media and publishing.  In 2001, he assumed his current position as president of FIPP.  The parties have not provided the full name of this organization or any further information about it.

company, and did not receive any distribution of shareholder profits. Kummerfeld continued, however, to deduct his loans to KAI on his income tax returns.[4]

B. KAI's Finances

KAI ceased being profitable in the mid-1990s and terminated active business operations in 2002. As found in the March 2004 Opinion, at the time and shortly following the actions that gave rise to the plaintiff's claims in 1997, KAI depended on Kummerfeld's financing, without which it would have ceased to function. KAI spent vastly more money than it received in fee income. In 1997, 1998 and 2000, a significant portion of the corporation's annual revenue consisted of unrestricted loans made by Kummerfeld from his personal assets to support the company's operations when it "needed cash." During these years, Kummerfeld contributed $931,000 in loans by drawing funds from his personal savings account and MPA retirement fund, and by refinancing a Cape Cod vacation home appraised at $1.7 million, which he jointly owns with his wife.[5] None of Kummerfeld's loans

---

[4] Kummerfeld has not explained whether these deductions were taken as business expenses or in some other way.

[5] The March 2004 Opinion noted Cordius's complaint in its motion for a writ of execution that KAI and Ms. Kummerfeld failed to produce financial information for 1999, 2000, and 2001, despite Cordius's repeated demands. March 2004 Opinion, at *2 n.2. It also noted that Kummerfeld failed to produce KAI's financial

5

were governed by terms set forth in notes.  KAI did not provide

any security for the loans or pay interest on them.  Kummerfeld

has testified, however, that in an "informal[]" agreement with

KAI, he gained the privilege of using KAI office space in

exchange for these loans, which permitted KAI to pay the rent

for its offices in Manhattan's East Side.[6]  KAI has not, to date,

repaid any portion of Kummerfeld's loans to the company.

_____

information for 1999, 2000, 2001, 2002, or 2003, even though
such information was requested by Cordius and is in Kummerfeld's
control as treasurer and chairman of KAI.  Id. at *2 n.2, *8
n.16.

     As a result, it is no surprise that the record on the
instant motion does not provide substantively different or
supplemented information regarding KAI's income and expenditures
from 1997 to 2001 as compared to the record before the Court of
Appeals.  Most significantly, Kummerfeld's failure to cooperate
in discovery has resulted in a lack of evidence regarding KAI's
finances in 1999, the year during which KAI and Ms. Kummerfeld
were found to have executed and failed to repay the promissory
note with Cordius that forms the basis of the action underlying
the instant petition.

     Kummerfeld, KAI, and Ms. Kummerfeld have failed to produce
any documents relating to KAI's financial records for years
other than 1997, 1998 and 2000.  The following figures regarding
KAI's finances were reported in the March 2004 Opinion and are
supported by the current record.  In 1997, Kummerfeld loaned KAI
$200,000, while the company received only $35,045 in fees and
spent $661,746.43.  In 1998, he loaned KAI $318,500 and the
company received $35,000 in fees and spent $731,935.21.  In
2000, Kummerfeld funded almost all of KAI's expenses by
providing it $412,500 in loans.  That year the company received
$48,000 in fees and spent $534,464.89.  Even in the face of his
refusal to produce documents relating to KAI's financial
condition in 1999 and 2001, Kummerfeld's testimony supports the
finding that he loaned money to KAI in a similar fashion during
these years.

[6] In 1999, Kummerfeld testified that he was renting an office
from KAI for his personal business for a fee of $3,000 per

Kummerfeld's loans were used to pay expenses that granted KAI the appearance of a legitimate business. These expenses include payments for renting KAI's East Side offices, utilities, insurance, office supplies, payroll for its employees and consultants.[7] For example, KAI's rent from 1997 to 2001 was $240,000.[8] Kummerfeld also paid for litigation expenses. The company retained an attorney to defend Elizabeth Kummerfeld against charges of wire fraud and conspiracy to defraud the United States in an action before this Court.[9] It also paid for

_____

month. Kummerfeld later testified in his November 2001 deposition,

> I have received no interest from the loans I have made. So the agreement I have informally with [KAI] is . . . [that] I get the office space, the use of the office space, the use of local phones and utilities . . . as an offset to the fact that [KAI] has not paid me any interest on the loans.

[7] The parties have not provided information as to the number of employees or consultants working for KAI during the years in question, or the amount of money paid to them.

[8] While Kummerfeld attests that KAI was reimbursed for a portion of its rental fees by subtenants who subleased its office space, he has failed to produce evidence as to the amount of money the company recouped from subtenants for its payment of rent. This evidence should be easily accessible to him as one of KAI's two sole officers and directors.

[9] Ms. Kummerfeld first appeared as a criminal defendant with retained counsel in United States v. Mintus, No. 00 Cr. 49 (KMW), in June 2000 and was convicted in 2001. Kummerfeld contends that he played no role in facilitating KAI's payment of her attorney's fees. Cordius has not produced evidence as to the amount KAI paid to retain Ms. Kummerfeld's counsel or when such payments were made. This deficiency is to be expected, however, due to Kummerfeld and the defendants' failure to

her legal representation with regard to a subpoena issued by the
United States Attorney in Cleveland, Ohio in a matter concerning
a co-defendant in her criminal case in the Southern District of
New York.[10]  In 2001, KAI spent $50,000 to settle a 2000 New York
Supreme Court judgment against it in an action brought by Blue
Arrow Services, Inc. to recover rents owed by KAI's subtenants
to its landlord.  Kummerfeld issued personal checks totaling
$50,000 to settle the matter.  In 2003, KAI settled a securities
fraud action brought against it and the Kummerfelds in the
Western District of Tennessee, Gazabo S.A. de C.V. v.
Kummerfeld, No. 01 Civ. 2579 (JPM).  Kummerfeld and his son-in-
law each wrote checks for $10,000 to settle this action.

    KAI also spent money on travel and entertainment from which
Kummerfeld personally benefited.  The company purchased tickets
for the Kummerfelds to travel on KAI trips abroad.  On October
29, 1997, KAI paid $469.69 for Kummerfeld to travel to Lisbon,
Portugal.  KAI similarly paid $3,888.70 on August 6, 1997, for
Kummerfeld to fly to Buenos Aires, Argentina.[11]  While Kummerfeld

---

produce evidence regarding KAI's financial information during
1999 and 2001.

[10] The parties have not provided information regarding the amount
that was paid to retain Ms. Kummerfeld's counsel in this matter
or the date on which KAI made such payment.

[11] Kummerfeld attests that KAI purchased his tickets to Lisbon
and Buenos Aires as part of two-for-one ticket deals, permitting
him to travel overseas with his wife while she conducted KAI

maintains that he conducted business on these trips as well, he has failed to offer evidence as to what business he conducted on behalf of KAI.

Since its inception and until 2002, KAI paid for the use of a corporate box at the U.S. Open, from which Kummerfeld also personally benefited. Between 1997 and 2002, it paid anywhere from $56,100 to $74,940 to secure courtside boxes and other seats at the U.S. Open.[12] After a 2003 subpoena was issued to the United States Tennis Association (USTA) to produce documents relating to KAI and the Kummerfelds' purchase of tickets, Kummerfeld wrote to the USTA to request that the name on the KAI box be changed to his own.

---

business without costing the corporation additional expense. He has provided no support for this contention other than his own testimony in his declaration on the instant motion.

[12] Ms. Kummerfeld testified that KAI shared its U.S. Open box with other corporate users who paid KAI for its use. Kummerfeld also contends that KAI used its seats at the U.S. Open to entertain clients, prospective clients, business associates, attorneys or consultants. He avers, without documentary or other support, that the cost of the tickets were passed on to friends and acquaintances when KAI became inactive and lacked funds.
  Kummerfeld has failed to produce any information about these corporate and individual users or their payments to KAI. The records regarding KAI's annual purchase of boxes and seats at the U.S. Open were produced only after a 2003 subpoena was issued to the USTA.

C. The Underlying Action

In March 1997, Cordius and KAI entered into an agreement
("Agreement") in which KAI promised to invest $400,000 of
Cordius's funds in a three-phase capital enhancement program.
Ms. Kummerfeld promised on numerous occasions to return the
plaintiff's investment plus any profits.  Cordius's counsel
wrote to Kummerfeld on August 5, 1998, as chairman of KAI
regarding the company's non-performance under the Agreement and
Ms. Kummerfeld's promises to return "Cordius' [sic] principal
and a 240% profit."  On March 5, 1999, Ms. Kummerfeld executed a
promissory note ("Note") for $1,418,000 to settle Cordius's
claims against KAI for fraud and misconduct.  KAI failed,
however, to make any payments required by the Note.

Cordius brought suit against Ms. Kummerfeld in her
individual capacity and as president of KAI for breach of the
Note.  After a one-day bench trial on February 7, 2000, this
Court delivered an Opinion from the bench dismissing the
defendants' affirmative defenses, finding that the defendants
breached the Note, and granting judgment in favor of Cordius.
Transcript of Record at 88, Cordius Trust v. Kummerfeld, No. 99
Civ. 3200 (DLC) (no. 52) (Feb. 7, 2000) ("2000 Opinion").  The
2000 Opinion also dismissed the defendants' counterclaim that
the Note was unconscionable and awarded Cordius the full amount

of the Note plus reasonable costs and attorneys' fees.  Id.  The

2000 Opinion stated,

> The defendants' promised investment program indicates to
> this Court an effort to defraud the plaintiff.  The failure
> to pay and the false statements contained in the letters
> prepared by the defendant and submitted to the plaintiff
> and which have been received in evidence during the course
> of this trial show a course of conduct to further victimize
> the plaintiff and deprive it of monies to which it was
> lawfully entitled.

Id.  This Court issued the April 2000 Judgment in favor of

Cordius soon thereafter.

Cordius issued a demand to KAI and Ms. Kummerfeld on April

13 for immediate payment of the April 2000 Judgment, interest,

attorney fees and costs.  The Second Circuit Court of Appeals

affirmed the judgment on November 30, 2000.  Cordius Trust v.

Kummerfeld Assocs., Inc., 242 F.3d 264 (Table), 2000 WL 1775516

(2d Cir. Jan. 2, 2001).[13]  On February 20, 2001, Cordius served

Ms. Kummerfeld and KAI with a Restraining Notice to Judgment

Debtors pursuant to N.Y. C.P.L.R. § 5222(b).  Neither KAI nor

Ms. Kummerfeld has made any payments on the April 11, 2000

judgment to date.[14]

---

[13] The mandate issued on January 2, 2001.

[14] Kummerfeld claims that KAI repaid approximately $200,000 of
Cordius's $400,000 investment under the Agreement.  This
contention is supported only by Kummerfeld's own deposition
testimony and is, nevertheless, irrelevant to resolution of the
instant motion.  This Court has already found, following trial
in the underlying action, that KAI's two alleged payments to

D. Petition for Writ of Execution and Turnover Order

On March 25, 2003, Cordius moved pursuant to Rule 69, Fed.
R. Civ. P., for the issuance of a writ of execution and turnover
order piercing the corporate veil of KAI and rendering
Kummerfeld's assets amenable to attachment to satisfy the April
2000 Judgment.  Adopting the February 19, 2004 Report and
Recommendation of Magistrate Judge Ronald Ellis, this Court
denied Kummerfeld's motion to dismiss the petition.  March 2004
Opinion, at *1, 5.  It also granted Cordius's motion to pierce
the corporate veil of KAI on the grounds that Kummerfeld (1)
failed to raise a material question of fact as to his domination
of KAI, and (2) failed to "provide[] evidence genuinely
disputing the Report's conclusion that his domination of KAI was
used to perpetuate a wrong injuring Cordius, <u>namely the failure
of KAI to satisfy the judgment in this action</u>."  March 2004
Opinion, at *8 (emphasis supplied).  In support of the latter
finding, the March 2004 Opinion found as follows:

> Mr. Kummerfeld was deposed three times in relation to the
> underlying action, and Mr. Kummerfeld does not contend that
> he was unaware of the judgment entered by this Court.  He
> continued to loan substantial amounts to KAI, without which
> it likely would not have been able to continue, and
> continues to act as chairman of the board and treasurer.
> In 2001, he utilized KAI's office space and its seats to
> the U.S. Open, and traveled to Kuala Lampur for what he
> asserts was KAI business.  Since the entry of judgment in

Cordius of $100,000 were not made on the Note that is the
subject of this litigation.

March 2000, KAI has not made a single payment in
satisfaction of the judgment owed to Cordius.

Id. Based on these facts, the March 2004 Opinion found it
"necessary to pierce the corporate veil of KAI and render Mr.
Kummerfeld's assets amendable to attachment in order to enforce
this Court's prior judgment and to achieve equity in this
matter." Id. On April 30, this Court issued the April 2004
Judgment, which pierced the corporate veil of KAI and ordered
Cordius to recover damages from Kummerfeld in the amount of
$1,418,000 plus interest, attorneys fees and costs.

Kummerfeld appealed the March 2004 Opinion and April 2004
Judgment on May 11, 2004. On October 4, 2005, the Court of
Appeals affirmed this Court's denial of Kummerfeld's motion to
dismiss Cordius's petition for a writ of execution and turnover
proceeding. It rejected all of Kummerfeld's procedural
arguments for the reasons set forth in the March 2004 Opinion
and held that Cordius had "alleged facts sufficient to survive
Kummerfeld's motion to dismiss for failure to state a claim."
Appellate Opinion, 153 Fed. Appx. at 762-63. It also held that
"Cordius has shown, as a matter of law, that Kummerfeld
dominated KAI." Id. at 763. The Court of Appeals found that
"[i]t is . . . not in question that KAI defaulted on the note
and failed to pay the judgment Cordius obtained against it."
Id. It found, however, that based on the record before it,

> Cordius has not yet demonstrated . . . that Kummerfeld <u>used</u>
> <u>his domination of KAI to cause either of these wrongs</u>.  Nor
> has Cordius demonstrated that <u>these wrongs reflect the sort</u>
> <u>of abuse of the corporate form</u> warranting the intervention
> of equity to pierce a corporate veil.

<u>Id.</u> (emphasis supplied).  The Court of Appeals vacated the April

2004 Judgment piercing KAI's veil and ordering Cordius to

recover from Kummerfeld.  It remanded the matter "to permit

further development of the factual record on these questions."

<u>Id.</u> at 764.

Kummerfeld requested a jury to try the issues remanded

for trial by the Second Circuit.  On July 7, 2006, this Court

denied Kummerfeld's first motion for a jury trial as untimely.

<u>Cordius Trust v. Kummerfeld</u>, No. 99 Civ. 3200 (DLC), 2006 WL

1876677 (S.D.N.Y. July 7, 2006).  At this Court's invitation,

Kummerfeld brought a second motion for a jury trial pursuant to

Rules 6(b)(2) and 39(b), Fed. R. Civ. P., which was granted on

December 8, 2006.  <u>Cordius Trust v. Kummerfeld</u>, No. 99 Civ. 3200

(DLC), 2006 WL 3544341 (S.D.N.Y. Dec. 8, 2006).


DISCUSSION

As upheld by the Court of Appeals, Cordius has properly

brought its effort to enforce the April 2000 Judgment as a

special turnover proceeding for a writ of execution to pierce

the corporate veil pursuant to Rule 69(a), Fed. R. Civ. P.,[15] and

N.Y. C.P.L.R. § 5225(b).[16]  Appellate Opinion, 153 Fed. Appx. at

762-63.  "[A] court may grant summary relief where there are no

questions of fact, but it must conduct a trial on disputed

issues of fact on adverse claims in a turnover matter."  <u>HBE

Leasing Corp. v Frank</u>, 48 F.3d 623, 633 (2d Cir. 1995) (citation

omitted).  Summary relief may not be granted unless all of the

submissions taken together "show that there is no genuine issue

as to any material fact and that the moving party is entitled to

a judgment as a matter of law."  Rule 56(c), Fed. R. Civ. P.

The moving party bears the burden of demonstrating the absence

of a material factual question, and in making this determination

---

[15] Rule 69(a) permits the prevailing party in a federal court to
use state law procedures to enforce a judgment.  Fed. R. Civ. P.
69(a).

[16] N.Y. C.P.L.R. § 5225(b) provides in pertinent part,

> Upon a special proceeding commenced by the judgment
> creditor, against a person in possession or custody of
> money or other personal property in which the judgment
> debtor has an interest, or against a person who is a
> transferee of money or other personal property from the
> judgment debtor, where it is shown that the judgment debtor
> is entitled to the possession of such property or that the
> judgment creditor's rights to the property are superior to
> those of the transferee, the court shall require such
> person to pay the money, or so much of it as is sufficient
> to satisfy the judgment, to the judgment creditor and, if
> the amount to be so paid is insufficient to satisfy the
> judgment, to deliver any other personal property, or so
> much of it as is of sufficient value to satisfy the
> judgment, to a designated sheriff.

the court must view all facts in the light most favorable to the non-moving party.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Sista v. CDC Ixis N. Am., Inc.</u>, 445 F.3d 161, 169 (2d Cir. 2006).  When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on the "mere allegations or denials" of the movant's pleadings.  Rule 56(e), Fed. R. Civ. P.; <u>accord</u> <u>Sista</u>, 445 F.3d at 169.  Only disputes over material facts, facts that might affect the outcome of the suit under the governing law, will properly preclude the entry of summary judgment.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

Under New York law, a court may pierce the corporate veil where necessary "to achieve equity."  <u>Morris v. N.Y. State Dep't of Taxation & Fin.</u>, 82 N.Y.2d 135, 140 (1993) (citation omitted).  To circumvent the limited liability of the owners of a corporation and impose liability on them for a corporate obligation, a plaintiff must show that "1) the owner exercised complete domination over the corporation with respect to the transaction at issue, and 2) such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil."  <u>MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC</u>, 268 F.3d 58, 63 (2d Cir. 2001) (citation omitted); <u>Morris</u>, 82

N.Y.2d at 141. "While complete domination of the corporation is the key to piercing the corporate veil, such domination, standing alone, is not enough." <u>Am. Fuel Corp. v. Utah Energy Dev. Co., Inc.</u>, 122 F.3d 130, 134 (2d Cir. 1997) (citation omitted). The party seeking to persuade a court to disregard the corporate form must also meet the second prong of the veil-piercing test.

> New York law will not allow the corporate veil to be pierced in the absence of a showing that <u>this control was used to commit wrong</u>, fraud, or the breach of a legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights, and that <u>the control and breach of duty proximately caused the injury complained of</u>.

<u>Freeman v. Complex Computing Co., Inc.</u>, 119 F.3d 1044, 1053 (2d Cir. 1997) (citation omitted) (emphasis supplied).[17] Thus, a plaintiff seeking to pierce the corporate veil must show "that the domination occurred <u>for the purpose</u> of committing a wrong." <u>MAG Portfolio</u> 268 F.3d at 64 (emphasis supplied). This burden can be met by showing that the owner "misused the corporate form for his personal ends so as to commit" the wrong. <u>Morris</u>, 82

---

[17] In applying the federal common law doctrine of piercing the corporate veil, the Tenth Circuit has similarly emphasized that the owner "must have shared in the moral culpability or injustice that is found to satisfy the second prong of the test." <u>NLRB v. Greater Kan. City Roofing</u>, 2 F.3d 1047, 1053 (10th Cir. 1993). Thus, the owner must have abused the corporate privilege and the inequity being addressed by the lawsuit "must flow from the misuse of the corporate form." <u>Id.</u>

N.Y.2d at 143.[18]  Ultimately, the determination of whether to

pierce the corporate veil is a "very fact specific inquiry

involving a multitude of factors."  MAG Portfolio, 268 F.3d at

64.  The inquiry "may not be reduced to definitive rules . . .

."  Morris, 82 N.Y.2d at 141.  The injured party must show that

the "totality of the evidence" overcomes the presumption of

corporate independence and justifies disregarding the corporate

form "to protect those who deal with the corporation."  Wm.

Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933

F.2d 131, 139 (2d Cir. 1991).

    This Court has already found, and the Court of Appeals has

affirmed, that Cordius has met the first prong of the veil-

---

[18] The parties have relied on many cases that predate the
rearticulation of the test for piercing the corporate veil in
New York.  The Second Circuit's understanding of this law
shifted in 1993 with the New York Court of Appeals decision in
Morris.  The Second Circuit explained this shift in New York law
in Thrift Drug, Inc. v. Universal Prescription Adm'rs, 131 F.3d
95, 97 (2d Cir. 1997).

    In Carte Blanche [(Singapore) Pte., Ltd. v. Diners Club
    Int'l, Inc., 2 F.3d 24, 26 (2d Cir. 1993),] we held that
    New York law permits plaintiffs to pierce the corporate
    veil either "to prevent fraud or other wrong, or where a
    parent dominates and controls a subsidiary."  Id. (emphasis
    added).  Since the district court's decision, we have
    interpreted Carte Blanche to require, in order to pierce
    the corporate veil, "(i) that the owner exercised complete
    domination over the corporation with respect to the
    transaction at issue; and (ii) that such domination was
    used to commit a fraud or wrong that injured the party
    seeking to pierce the veil."

Id. (citation omitted) (emphasis in original).

piercing test by establishing that Kummerfeld dominated KAI as a matter of law.[19]  The issues that remain to be resolved on both of the instant motions relate solely to the test's second prong. For example, to defeat Kummerfeld's motion, Cordius must demonstrate that there exists a genuine question of material fact as to whether Kummerfeld exercised his domination of KAI for the purpose of injuring Cordius and that this exercise of control over KAI caused the corporation to injure Cordius either by defaulting on the Note issued to Cordius or by failing to pay the judgment won by Cordius.  Evidence that Kummerfeld misused the corporate form for his personal benefit may assist Cordius in satisfying this burden.

Cordius has not shown that it is entitled to summary judgment, but it has presented sufficient evidence to defeat Kummerfeld's motion for summary judgment and to require a trial to determine whether Kummerfeld injured it by misuse of the corporate form.  Cordius has presented evidence that would permit a jury to find that KAI has conducted no legitimate business since at least 1997, the year in which it obtained the

---

[19]  As set forth in the March 2004 Opinion, this Court found that KAI's inadequate capitalization as well as the Kummerfelds' failure to observe corporate formalities with respect to KAI, their appropriation of KAI funds for their own use, and their commingling of their personal funds with those of KAI all supported the conclusion that Kummerfeld dominated KAI.  March 2004 Opinion, at *8.  See also Freeman, 119 F.3d at 1053 (listing factors considered on question of domination).

$400,000 investment from Cordius, and that it has long since ceased to be profitable, if it ever was. Kummerfeld was aware of these facts as an officer of KAI and from working in its offices, and was also aware since at least 1998 that Cordius has been demanding a return of its investment. Instead of ensuring that whatever funds available were used to repay Cordius, Kummerfeld permitted KAI to continue in operation and to ignore this demand. KAI was grossly undercapitalized and depended on Kummerfeld to pay certain critical expenses, including the lease on its 55th Street offices and some of its litigation expenses and debts. With Kummerfeld's aid, KAI continued in operation through 1999, when it executed the Note to Cordius, and through 2000, when judgment was entered against KAI in favor of Cordius, and beyond. Kummerfeld personally benefited from this continued operation. It gave him tax benefits, entertainment and travel benefits, and space in an office in Manhattan's East Side without having personal liability for a lease. Kummerfeld's misuse of the corporate form injured Cordius by depriving it of the opportunity to recover on the Note or the April 2000 Judgment by obtaining funds directly from KAI or, if necessary, its bankruptcy estate. With critical assistance from Kummerfeld, KAI remained in business, avoiding its legitimate debts and depriving Cordius of the opportunity to reach assets.

There is even circumstantial evidence that Kummerfeld was personally involved in the decision of whether to pay KAI's debt to Cordius. Cordius has evidence to permit a jury to find that he was well aware of the obligation to repay the Note and to pay the April 2000 Judgment. It also has evidence to support a finding that Kummerfeld was intimately familiar with Cordius's financial condition and all of its obligations, and decided which of these obligation would be met and which would be avoided.

Although Cordius does not have evidence to show that KAI had funds at any particular time to pay the entire Note or April 2000 Judgment, this deficiency is not an insuperable barrier to recovery. Because KAI and Kummerfeld failed to cooperate in discovery and produce KAI's business records, Cordius may be entitled to the benefit of certain inferences at trial, or even a spoliation charge.[20]

---

[20] It is important to note that despite the goal of the Court of Appeals to permit further development of the factual record, Kummerfeld's refusal to cooperate in discovery has resulted in a record that is nearly identical to the record considered by this Court in the March 2004 Opinion and by the Court of Appeals in its review of that Opinion. The record remains filled with gaps, most notably due to KAI and Kummerfeld's failure to produce documents relating to KAI's financial condition in 1999, 2000, 2001, 2002, and 2003 either prior to or after the issuance of the March 2004 Opinion. See March 2004 Opinion, at *2 n. 2, *8 n.16. As a result of his failure, Cordius has been denied the usual means by which plaintiffs prove that one who is found to dominate a corporation has used his domination to cause the plaintiff's injury. These usual means include showing that

In sum, this case may be the unusual one in which it is appropriate to pierce the corporate veil. A jury is under no obligation to find Kummerfeld credible or to find his explanations believable. See, e.g., Dillon v. Morano, No. 06 Civ. 2501, slip op., 2007 WL 2323987, at *5 (2d Cir. Aug. 16, 2007). Based on an evaluation of the totality of circumstances in this case, including Kummerfeld's intimate connection with the affairs of KAI, a jury may find that his disregard of KAI's corporate form proximately caused injury to Cordius. Kummerfeld has failed to establish that no reasonable jury, viewing the evidence in the light most favorable to Cordius and drawing all inferences in Cordius's favor, could return a verdict favorable to Cordius. Id.

---

Kummerfeld diverted payments made to the corporation into his personal bank accounts or toward the purchases of goods or services for his personal benefit, to the expense of KAI's ability to meet its corporate obligations. See, e.g., JSC Foreign Econ. Assoc. Technostroyexport v. Int'l Dev. & Trade Servs., Inc., 386 F. Supp. 2d 461, 475-76 (S.D.N.Y. Sept. 6, 2005).

The parties may brief at trial the impact of Kummerfeld's failure to produce records. Due to Kummerfeld's failure to cooperate in discovery, all inferences in evaluating the record may be drawn against him.

CONCLUSION

        The plaintiff's and defendant's motions for summary

judgment are denied.


        SO ORDERED:

Dated:    New York, New York
          August 29, 2007

                                     _Denise Cote_
                                     DENISE COTE
                                 United States District Judge

COPIES SENT TO:

James Wade                           Paul Brown
Bradford S. Babbitt                  Walter Saurack
ROBINSON & COLE LLP                  Satterlee Stephens Burke & Burke LLP
280 Trumbull Street                  230 Park Avenue
Hartford, CT 06103-3597              New York, NY 10169

PLEASE IMMEDIATELY SEND COPIES TO ALL
COUNSEL