UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CORDIUS TRUST,

              Plaintiff,

    - against -

KUMMERFELD ASSOCIATES, INC., et al.,

              Defendants.

**REPORT AND**
**RECOMMENDATION**

**99 Civ. 3200 (DLC) (RLE)**

## To the HONORABLE DENISE L. COTE, U.S.D.J.:

This Report and Recommendation shall replace my Opinion and Order entered August 5,

2009. (*See* Doc. No. 205.) The Clerk is instructed to withdraw the August 5 Opinion.[1]

## I. INTRODUCTION

Before the Court is Cordius Trust's ("Cordius") motion to hold Donald D. Kummerfeld;

his wife, Elizabeth M. Kummerfeld; and their company, Kummerfeld Associates, Inc. ("KAI")

(hereinafter collectively "the Kummerfelds") in contempt for failing to comply with the

discovery order of the undersigned and failing to comply with Cordius's execution of the

judgment against them. Pursuant to the Federal Magistrates Act, I certify the following facts and

order the Parties to appear before Judge Cote at a date and time set by her chambers for the

Kummerfelds to show cause why they should not be adjudged in contempt and sanctioned. *See*

28 U.S.C. § 636(e)(6)(B). For the reasons that follow, I recommend that the Kummerfelds be

---

[1] By Order dated August 27, 2009, District Judge Cote referred Defendants' August 14, 2009 Objections to my August 5, 2009 Opinion and Order. I have considered their objections as a motion to reconsider and address any factual matters or controlling precedent that might have been overlooked or not fully addressed, and "that might have materially influenced [the Court's] earlier decision." *See Robins v. Max Mara, U.S.A., Inc.*, 923 F. Supp. 460, 473 (S.D.N.Y. 1996). I have also reviewed the August 27, 2009 Affidavit of James A. Wade, counsel for Cordius Trust. To clarify this Court's findings as to certain points raised by Defendants in their Objections and in the posture of certifying the facts regarding contempt to Judge Cote, I enter this Report and Recommendation.

found in contempt, and comply with the following sanctions within two (2) weeks: 1) the Kummerfelds shall pay Cordius $10,000 for fees and costs related to filing the instant motion for contempt; and 2) the Kummerfelds shall provide Cordius with documentation as to the value of their Cape Cod property for each year from 2000–the year judgment was first entered against KAI and Elizabeth Kummerfeld–to present, including documentation explaining any material change in that value.

Pursuant to Judge Cote's January 18, 2008 referral (*see* Doc. No. 168) and my role in settlement and discovery at that time, I ordered Donald Kummerfeld to 1) review Cordius's discovery requests that in part triggered this motion and the documents he was ordered to produce pursuant to my May 6, 2008 Order, 2) provide any unproduced responsive documents, and 3) submit an affidavit verifying that production is complete. Under cover dated August 31, 2009, Defendants provided an affidavit from Kummerfeld and confirmed that they have produced to Cordius Trust documents relating to the tax valuations and appraisal of the Kummerfelds' Cape Cod property. This submission should be considered by Judge Cote during any subsequent contempt hearing.

## II. BACKGROUND

Defendant Elizabeth Kummerfeld ("Ms. Kummerfeld") executed a promissory note on behalf of her and KAI pursuant to the settlement of Cordius's claims against them for fraud and securities violations. (Mem. of Law in Supp. of Petitioner's Mot. for Contempt ("Pet'r Mem."), July 17, 2008 at 1.) KAI and Ms. Kummerfeld subsequently defaulted on that note, and Cordius obtained a $1,418,000.00 judgment against them on April 11, 2000, affirmed by the Second Circuit on November 30, 2000. *Cordius Trust v. Kummerfeld*, 242 F.3d 364 (2d Cir. 2000).

2

Cordius was unable to enforce this judgment, and subsequently sought and won a verdict to pierce the corporate veil of KAI in order to reach the assets of Donald Kummerfeld. (Pet'r Mem. at 1.) Following that January 18, 2008 verdict, District Judge Cote entered judgment against the Kummerfelds on January 25, 2008, in the amount of $2,656,796.02, plus postjudgment interest at the rate of 6.87% per annum. (*Id.*) On March 31, 2008, the Court also awarded Cordius attorneys' fees in the amount of $327,595.00. (*Id.*)

Cordius argues that since entry of the original judgment, "the Kummerfelds have evaded all of Cordius's efforts to enforce the Judgment through the usual means available, such as the attachment of real and personal property." (*Id.* at 2.) When Cordius was unsuccessful in pursuing the Kummerfelds' property, it sought documentary discovery from Donald Kummerfeld to facilitate identification of assets. Cordius asserts that while Kummerfeld never objected, he "provided essentially nothing in response, even though Cordius extended him ample time beyond the deadline to do so." (*Id.* at 3.) Kummerfeld was subsequently deposed on the subject on April 23, 2008, and he "admitted to possessing many of the documents previously requested by Cordius." (*Id.*) Agreeing with Cordius's position, on May 6, 2008, I ordered Kummerfeld to comply with the document production requests made by Cordius. (*Id.*; Affidavit of James A. Wade ("Wade Aff."), July 16, 2008, ¶ 8.) Cordius asserts that "Kummerfeld has failed to produce the vast majority of those materials, or to disclose the location of his assets." (Pet'r Mem. at 3.) Cordius maintains that the Kummerfelds have "willfully . . . disobeyed, resisted, and interfered with the Court's lawful process, orders, directives, and instructions–including the Judgment and its execution–by: (1) violating restraining orders issued pursuant to C.P.L.R. § 5222(b); (2) fraudulently encumbering property subject to execution; and (3) failing to comply with the

3

Court's orders regarding discovery." (*Id.* at 5.)

The Kummerfelds respond that this contempt motion is merely Cordius's attempt to use the Court's "contempt powers to circumvent the appropriate and mandatory . . . states' law remedies and procedures." (Mem. of Law in Opp'n to Pl.'s Mot. for Contempt ("Opp'n Mem."), Aug. 4, 2008 at 1.) They argue that Cordius was unsuccessful in executing the judgments against the property at issue with respect to enforcement of both a foreign judgment and one that was not final since an appeal was pending.[2] (*Id.* at 2.) The Kummerfelds conclude that Cordius "now improperly seeks to use this Court's contempt power to (a) achieve the conveyance of the property to itself and bypass the laws of the Commonwealth of Massachusetts and (b) to evade substantial financial liability should the most recent judgment be reversed." (*Id.*)

## III. DISCUSSION

## A. Legal Standards for Finding Civil Contempt[3]

The Court's inherent power to hold a party in contempt "reach[es] conduct before the court and beyond the court's confines" and is a necessary function for purposes of managing and maintaining order in the efficient and expeditious administration of justice. *Leadsinger, Inc. v. Cole*, No. 05 Civ. 5606 (HBP), 2006 WL 2266312, at *8 (S.D.N.Y. Aug. 4, 2006) (referencing

---

[2] At the time the Parties briefed the instant motion, Judge Cote's opinion piercing the corporate veil was pending on appeal before the Second Circuit. On June 2, 2009, the Second Circuit affirmed Judge Cote's judgment. *See Cordius Trust v. Kummerfeld*, 2009 WL 1528762 (2d Cir. June 2, 2009).

[3] Cordius first argues that contempt can be based on 18 U.S.C. § 401, which provides that the Court may impose fines or punish by imprisonment where it finds litigants have disobeyed its orders. *Id.* § 401(3); (Pet'r Mem. at 4); *see also SEC v. American Bd. Of Trade, Inc.*, 830 F.2d 431, 439 (2d Cir. 1987). The Kummerfelds respond that this provision is inappropriate because it applies to criminal sanctions, and that there is insufficient evidence of any willful violation of a court order to justify such sanctions here. (Opp'n Mem. at 4.) Cordius does not explicitly move for a finding of criminal contempt, and in its reply simply reiterates that it is seeking coercive sanctions and sanctions to remedy. I find that there is no basis to consider criminal contempt.

4

*Young v. United States ex rel. Vuitton et Fils, S.A.*, 481 U.S. 787, 798 (1987); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). The "power to hold a party in civil contempt may be exercised only when (1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply." *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1351 (2d Cir. 1989); *see also In re Weiss*, 703 F.2d 653, 660 (2d Cir. 1983) (referencing *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441 (1911)); *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)). Contemptuous conduct generally includes "willful disobedience of, resistance to, or interference with the court's lawful process, order, directive, or instruction or its execution." 17 AM. JUR. 2d *Contempt* § 22 (2008). However, the Court does not need to find the conduct at issue was willful in order to conclude that it merits a civil contempt finding. *See Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 5 (2d Cir. 1989); *Zino Davidoff SA v. CVS Corp.*, No. 06 Civ. 15332 (RJS), 2008 WL 1775410, at \*6 (S.D.N.Y. April 17, 2008).

## 1. Federal Rule of Civil Procedure 37

"If a party . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders." FED. R. CIV. P. 37(b)(2)(A). Such orders include "treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination." FED. R. CIV. P. 37(b)(2)(A)(vii). Cordius argues that the Kummerfelds have failed to comply with the Court's May 6, 2008 Discovery Order, the result of a hearing before the undersigned at which the

5

Court ordered Kummerfeld to produce all documents identified and requested during his April 23, 2008 deposition within two weeks of his receipt of a list of the requested documents. (Pet'r Mem. at 11; Wade Aff. ¶ 8.) Cordius sent a letter to Kummerfeld's counsel on May 9, 2008, and, after agreeing to an extension of time to respond, Kummerfeld responded on May 27, 2008. (Pet'r Mem. at 11; Wade Aff. ¶ 38.) Cordius argues that "[f]ar from a diligent effort to comply with the Court's order to produce *all* of the requested documents . . . , Mr. Kummerfeld provided only a handful of documents, and nowhere near all of the materials that he had identified at his deposition." (Pet'r Mem. at 11; Wade Aff. ¶¶ 9, 39, 40.) Cordius maintains that this "unwillingness to comply" is illustrative of the Kummerfelds' "pre-judgment behavior." (Pet'r Mem. at 11.) Cordius highlights instances where the Court has identified Kummerfeld's failure to cooperate in discovery and asserts that contempt is an appropriate sanction for failure to comply with this Court's May 6 Order. (*Id.* at 12.) The Kummerfelds sought to cure any purported deficiency in their production of responsive documents by including them in opposing Cordius's motion for contempt. They argue that this substantially satisfies all discovery demands and the Court's Order. (Opp'n Mem. at 4.)

Cordius replies that Kummerfeld represented to the Second Circuit on July 29, 2008, that he had produced all responsive KAI documents in his possession in January 2008. Cordius asserts that this contradicts Kummerfeld's representation to this Court that he has only just fulfilled his discovery obligations with his production of documents on August 4, 2008. (Pet'r Mem. at 7 (referencing Brief & Special App'x of Respondent-Appellant, July 29, 2008 at 20).) Cordius further argues that "Kummerfeld's August 4, 2008 production of hundreds of pages of KAI documents responsive to requests outstanding for months and years demonstrates the

6

wisdom and accuracy of Judge Cote's appraisal that the testimony of the Kummerfelds was 'on many points, incredible.'" (Pet'r Reply at 7-8 n.3 (quoting Trial Transcript ("Tr."), Jan. 18, 2008 at 713:14-15).) Cordius maintains that regardless of the last-minute production, contempt sanctions are appropriate. It argues that it is at least entitled to its attorneys' fees and expenses incurred in preparing this motion. (Pet'r Reply at 8); *see* FED. R. CIV. P. 37(b)(2)(C).

I find that (1) my order to Kummerfeld to produce outstanding discovery by a date certain was clear and unambiguous,[4] (2) evidence of Kummerfeld's noncompliance is particularly clear through his own admission and his accompanying submission of additional responsive documents with his oppositions papers, and (3) Kummerfeld fails to explain his lack of compliance prior to Cordius's filing of the instant contempt motion, which suggests a lack of diligence to reasonably, and in good faith, comply. Further, I conclude that, while production may now be complete, Kummerfeld cannot remedy his noncompliance with my Order by belatedly producing documents, and only after the filing of a motion for contempt. Therefore, I recommend that Kummerfeld be found in contempt of my May 6, 2008 Order. *See Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 71 (E.D.N.Y. 2008) (Magistrate Judge's role in certifying facts is to determine whether prima facie case of contempt is established); *see also Church v. Steller*, 35 F. Supp. 2d 215, 217 (N.D.N.Y. 1999).

---

[4]During the May 6, 2008 Settlement Conference, I orally ordered that Donald Kummerfeld provide to Cordius all documents identified and requested during his April 23, 2008 deposition within fourteen (14) days of his receipt of a list of the requested documents. I further ordered Cordius to provide a status update as to Kummerfeld's compliance with this Order by May 30, 2008. The Order as to the status report was entered in writing following the conference. (Doc. No. 184.) A party may be subject to a contempt finding for violating an oral order. *See, e.g., Town of Islip v. E. Air Lines, Inc.*, 793 F.2d 79, 83 (2d Cir. 1986); *In re MarketXT Holdings Corp.*, 336 B.R. 39 (Bankr. S.D.N.Y. 2006); *Chapman v. Pac. Tel. & Tel. Co.*, 613 F.2d 193 (9th Cir. 1979); *United States v. Scarfo*, 263 F.3d 80, 88 n.6 (3d Cir. 2001). Furthermore, Kummerfeld's at issue noncompliance is exacerbated by other instances of misconduct and his contradictory testimony as to the completeness of his production. The oral order was clear and definite. Moreover, even if it was unclear when precisely Kummerfeld had to fully comply, I find that the delay was so significant that Kummerfeld is in violation of my May 6 Order.

7

## 2. Kummerfelds' Failure to Comply with the Judgment

This Circuit has concluded that a contempt order may be appropriate where a party has failed to pay a monetary judgment or sanction issued against it. *See, e.g., Huber v. Marine Midland Bank,* 51 F.3d 5, 10 (2d Cir. 1995) (confirming that a party's inability to comply with an order to pay court-imposed monetary sanctions is a defense to a charge of civil contempt and the alleged contemnor bears the burden of producing evidence of his inability to comply); *United States v. Chusid,* 372 F.3d 113, 116-17 (2d Cir. 2004) (affirming contempt finding where contemnor has the ability to direct the payment of funds, and incarcerating him until he satisfies his obligations to make restitution and pay the fine imposed by the court). A party is obligated to pay as much of any judgment against it as is possible under the circumstances. *See SEC v. Contini,* No. 93 Civ. 4400 (RWS), 2005 WL 2649092 (S.D.N.Y. Oct. 17, 2005).

Cordius asserts that the Kummerfelds have not met their burden of proving that they cannot satisfy the judgment. (Pet'r Reply at 3.) It argues that the Kummerfelds should be subject to sanctions as a result of their "extended campaign of obfuscatory and even deceptive conduct in an attempt to avoid satisfying the judgment against them." (Pet'r Mem. at 12-13.) It reiterates that the Kummerfelds have spent more than one million dollars that "flowed through" KAI's bank accounts, but have not met their burden of demonstrating their inability to pay the judgment against them. (Pet'r Mem. at 13.) Cordius also asserts that it has demonstrated that the Kummerfelds possess in their Cape Cod property the means to pay at least a substantial portion of the judgment against them, and that the Kummerfelds are specifically in violation of restraining orders issued as a result of those judgments.

8

## a. Contempt for Failure to Comply with C.P.L.R. § 5222

### (1) Forum for Motion for Contempt

A federal district court judgment is enforced through the procedures in place in the state in which the court rendering the judgment is found. FED. R. CIV. P. 69(a)(1). New York's procedure may be found in C.P.L.R. § 5222, disobedience of which is punishable by contempt. A judgment creditor may move in federal court to hold a judgment debtor in civil contempt for transferring property in violation of N.Y. C.P.L.R. § 5222(b) (2000).[5] *See Adidas Sportschufabriken v. New Generation*, No. 88 Civ. 5519 (PKL), 1995 WL 646213, at *3 (S.D.N.Y. Nov. 3, 1995). Once the creditor has served the debtor with a restraining order, C.P.L.R. § 5222 prohibits the debtor from transferring or assigning property before the judgment has been satisfied. Similarly, the refusal or willful neglect to obey a restraining notice is punishable as contempt under C.P.L.R. § 5251. Several cases in this district have concluded that disobeying a restraining notice issued under C.P.L.R. § 5222 is a contempt of federal court where the restraining order was initiated by the judgment creditor as a means of executing a judgment entered in federal court. *See, e.g., Vinos Argentinos Imports USA, Inc. v. Los Andes Imports, Inc.*, No. 91 Civ. 2587 (JSM), 1993 WL 465353, at *1 (S.D.N.Y. Nov. 8, 1993); *see also Adidas Sportschufabriken*, 1995 WL 646213, at *3 (recognizing that § 5222(b) applies to federal proceeding pursuant to Federal Rule of Civil Procedure 69(a) where the judgment creditor moves for contempt against debtor for his failure to comply with postjudgment discovery demands and restraining notice); *Fasolino Foods Co., Inc. v. Banca Nazionale Del Lavoro*, No. 90 Civ. 334

---

[5]In 2008, the New York Legislature approved amendments to N.Y. C.P.L.R. § 5222 that took effect January 1, 2009. Since the restraining notices at issue and the instant contempt motion were all filed prior to this, all references herein, unless otherwise expressed, are to the earlier provisions.

9

(JMC), 1992 WL 123650 (S.D.N.Y. May 28, 1992) (reviewing a motion for contempt resulting from a supplementary proceeding pursuant to C.P.L.R. §§ 5223 and 5224 commenced by the prevailing party to enforce the court's judgment that was affirmed by the Second Circuit). It follows that a finding of contempt for violation of a restraining notice should not issue if the restraining notice is not valid, therefore, its validity and compliance with the statutory notice requirements should be reviewed. *See Stone Container Corp. v. Tradeway Int'l Corp.*, No. 91 Civ. 6881 (JFK), 1994 WL 184661 (S.D.N.Y. May 12, 1994).

### (2) Validity of Restraining Notices

A postjudgment restraining notice may be issued through the clerk of the court or through counsel for the judgment creditor. C.P.L.R. § 5222(a). However, "[l]eave of court is required to serve more than one restraining notice upon the same person with respect to the same judgment or order." § 5222(c). Additionally, where the debtor is a natural person the judgment creditor must provide the debtor with notice of potentially exempt funds and the procedure for getting such funds back, and must alert the debtor that he may wish to consult legal counsel. § 5222(e). Such Notice to Judgment Debtor or Obligor must be served on the debtor no earlier than a year before the service of the restraining notice or no later than four days after such service. § 5222(d).

The New York Legislation adopted the notice requirements of § 5222(d) and (e) in order to address due process concerns raised in *Deary v. Guardian Loan Co., Inc.*, 534 F. Supp. 1178 (S.D.N.Y. 1982). *See* DAVID D. SIEGEL, NEW YORK PRACTICE § 508 (4th ed.). In *Deary*, the court applied the balancing test from *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), and concluded that where a colorable claim of exempt income exists, due process is not satisfied if the judgment debtor is not afforded notice regarding which income might be exempt and the

10

relevant procedures for asserting the exemptions. *Deary*, 534 F. Supp. at 1186-88. Accordingly, primarily in the context of turnover proceedings initiated pursuant to C.P.L.R. § 5227, courts have concluded that failure to comply with the notice requirement in certain circumstances may violate due process and may thus result in an invalid restraining notice. *See Weinstein v. Gitters*, 462 N.Y.S.2d 553 (N.Y. Sup. Ct. 1983) (determining that service of the restraining notice alone on the judgment debtor is insufficient as it does not advise the debtor that he may consult legal counsel); *see also Chemical Bank v. Flaherty*, 468 N.Y.S.2d 315, 316 (N.Y. Civ. Ct. 1983) (holding that a restraining notice served on a third-party garnishee is defective unless the judgment creditor has "plead[ed] and prove[n] compliance" with C.P.L.R. § 5222(d)); *Kitson & Kitson v. City of Yonkers*, 835 N.Y.S.2d 670 (N.Y. App. Div. 2007).

New York courts have been reluctant to enforce restraining notices that do not comply with § 5222(d) and (e)'s notice requirement (subsection (d) articulates the requirement and subsection (e) dictates the content of the notice), even in situations where the debtor has suffered no prejudice as a result of the creditor's failure to serve a Notice to Judgment Debtor. *See, e.g.*, *Friedman v. Mayerhoff*, 592 N.Y.S.2d 909 (N.Y. Civ. Ct. 1992). Although courts have noted that "a strong basis for disregarding the failure to serve the debtor-defendants with the notice called for by subdivision e of CPLR 5222" exists in such cases, they have erred on the side of protecting fundamental due process rights. *See, e.g.*, *id.* at 911. Accordingly, the appropriate remedy for judgment creditors' failure to provide proper exemption notice to judgment debtors is to vacate the defective restraining notice. *See id.*

By the plain language of § 5222(e), corporate defendants, however, are not entitled to the benefit of the Notice to Judgment Debtor. *Vinos Argentinos*, 1993 WL 465353, at *1. In *Vinos*

11

*Argentinos*, the court concluded that a restraining notice is valid and enforceable as to a corporate defendant despite the lack of § 5222(e) notice. *Id.* Additionally, violations of a restraining notice by the corporation may be imputed to its president if the president controls the corporation and deliberately disregards a restraining notice that was served on him. *Id.* (referencing *Citibank, N.A. v. Anthony Lincoln-Mercury, Inc.*, 447 N.Y.S.2d 262, 263 (N.Y. App. Div. 1982)). In cases involving willful conduct, a defendant "may not use his position as sole stockholder and president of the defendant corporation[] to shield himself from contempt proceedings . . . ." *Citibank*, 447 N.Y.S.2d at 263.

Cordius argues that the Kummerfelds have repeatedly violated restraining orders issued pursuant to C.P.L.R. § 5222. (Pet'r Mem. at 5.) It maintains that in its efforts to collect on its April 11, 2000 judgment against KAI and Ms. Kummerfeld, it served them with restraining notices on February 20, 2001, and September 4, 2002. (Pet'r Mem. at 5; Wade Aff. ¶¶ 10 & 11, Exs. C & D.) Cordius adds that after Donald Kummerfeld's personal assets became amenable to attachment, subject to the verdict to pierce the corporate veil, Cordius also served him with a restraining notice on August 2, 2004. (Pet'r Mem. at 5; Wade Aff. ¶ 12.) Cordius contends that the Kummerfelds violated the restraining orders by encumbering their alleged vacation property to decrease its value, and by spending significant income that could have been provided in partial satisfaction of Cordius's judgment.

The Kummerfelds argue that the restraining notices are fatally defective because they fail to comply with C.P.L.R. § 5222(d) and (e) regarding the notice of exempt property or money. The Kummerfelds contend that "[d]efendants KAI and Elizabeth Kummerfeld, upon information and belief, never received such CPLR 5222(e) notice at any time whatsoever with respect to the

12

restraining notices dated February 20, 2001, and September 4, 2002." (Opp'n Mem. at 7.) The Kummerfelds argue that the evidence provided by Cordius fails to indicate if, when, or how the Restraining Notice to Debtor was served.[6] (*Id.*)

Cordius maintains that these notice requirements are limited to natural persons and do not apply to corporate entities. (Pet'r Reply, Aug. 15, 2008 at 5); *see Vinos Argentinos*, 1993 WL 465353, at *1-2. Alternatively, Cordius argues that Donald Kummerfeld dominated KAI beginning in 1997, and this fact supported the piereing of the corporate veil, rendering notice to KAI as notice to Donald Kummerfeld. (Pet'r Reply at 5-6.)

Having considered the Parties' arguments, I reject the Kummerfelds' position that the restraining notices should be found invalid. KAI, as a corporate entity, is not entitled to § 5222(d) and (e) notice, *see Vinos Argentinos*, 1993 WL 465353, at *1, and therefore the restraining notice served on it in 2001 is not fatally defective for lack of such notice. Mr. and Ms. Kummerfeld fully control the corporation and its activities, and are the sole officers and shareholders. *See Cordius Trust v. Kummerfeld*, 99 Civ. 3200 (DLC), 2007 WL 2435156, at *1 (S.D.N.Y. Aug. 29, 2007). The Kummerfelds do not dispute that they received the restraining notice and were aware of its restrictions, yet, they deliberately engaged in activities which they should have known would violate the terms of the notice, such as spending more than $140,000 in KAI funds on U.S. Open tickets in 2001 and 2002. (Pet'r Mem. at 9; Wade Aff. ¶¶ 20, 21.) They should not be able to use their positions as officers and shareholders to elude the consequences of their deliberate actions in defiance of a valid restraining notice. *See Vinos Argentinos*, 1993 WL 465353, at *1.

---

[6]The Kummerfelds also note a lack of evidence that Donald Kummerfeld was served with the July 19, 2004 notice (Opp'n Mem. at 7), but Cordius provides the affidavit of service and a copy of the signature card (*see* Pet'r Reply, Ex. A).

13

Although the 2001 restraining notice served on Ms. Kummerfeld and the 2004 restraining notice served on Mr. Kummerfeld did not comply with the notice requirements of § 5222(d) and (e), I find that under the facts of the instant case there is no due process violation in enforcing the notices. In determining what process is sufficient to satisfy the Due Process Clause of the United States Constitution, courts apply the *Mathews* balancing test. *See, e.g., Mayers v. N.Y. Cmty. Bancorp, Inc.*, 2005 WL 2105810 (E.D.N.Y. Aug. 31, 2005); *Cole v. Goldberger, Pedersen & Hochron*, 410 N.Y.S.2d 950 (N.Y. Sup. Ct. 1978); *McCahey v. L.P. Investors*, 774 F.2d 543, 548 (2d Cir. 1985); *Warren v. Delaney*, 469 N.Y.S.2d 975, 977 (N.Y. App. Div. 1983). Specifically, courts consider several factors: "'[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Mayers*, 2005 WL 2105810, at *11 (quoting *Mathews*, 424 U.S. at 334-35). On the facts of the instant case, the government's interest in facilitating the enforcement of judgments obtained in its courts, and the creditor's interest in satisfying a judgment outweigh the debtor's interest in non-exempt property. The State has a strong interest in enforcing its judgments with as little government interference as possible, *Cole*, 410 N.Y.S. 2d at 954 (referencing *First Nat'l Bank v. Hasty*, 410 F. Supp. 482, 490 (E.D. Mich. 1976)), and the judgment creditor undoubtedly has a strong interest in satisfying the judgment. On the other hand, "[t]he debtor's interest in preserving non-exempt property for his or her own use is of course subservient to the creditor's judgment." *McCahey*, 774 F.2d at 549. In the instant case, Cordius has a valid judgment against the Kummerfelds and KAI, and has

14

a strong interest in getting that judgment enforced. Moreover, the Kummerfelds have not alleged, and I do not find, any indication that exempt or potentially exempt property was affected by the restraining orders. Moreover, the restraining notices do not have the effect of divesting the Kummerfelds of any of their property but merely of inhibiting their dissemination of property and assets. Since no exempt assets were involved, the risk of erroneous deprivation is minimal.

The cases that address the validity of restraining notices in the absence of § 5222(d) and (e) notice have primarily confronted situations where the restraining notice was served on a third-party garnishee. *See, e.g., Chemical Bank*, 468 N.Y.S.2d 315; *Lincoln Financial Servs.*, 851 N.Y.S.2d 58; *Friedman*, 592 N.Y.S.2d 909; *Weinstein*, 462 N.Y.S.2d 553. Under those circumstances, the failure to comply with § 5222(d) and (e) is fatal to the restraining notice since the judgment debtor may not find out that their assets are being restrained until several days, or even several weeks, after the fact and may not get an opportunity to assert statutory exemptions before the restraint becomes unduly burdensome. Here, the persons at issue are the judgment debtors themselves and not third-party garnishees. Additionally, the restraining notices were issued as a result of a judgment in Cordius's favor following extensive litigation and of which the Kummerfelds were acutely aware. Furthermore, the Kummerfelds were represented by an attorney who necessarily had knowledge of the restraining notices and was capable of advising his clients about any potential exemptions and the procedure for asserting them. Indeed, it appears that the Kummerfelds were well aware of their ability to assert exemptions as they apparently attempted to take advantage of a statutory homestead exemption with respect to their Cape Cod property. Significantly, the record does not indicate that the Kummerfelds sought to vacate or otherwise challenge the restraining notices in court. Rather, they simply disregarded

15

them and knowingly and deliberately engaged in conduct that clearly violated the notices and was in blatant disregard of the Court and its judgment. I find that the Kummerfelds had sufficient notice and opportunity to be heard with respect to the restraining notices or any exemptions that they may have wished to assert. Under the circumstances, a Notice to Judgment Debtor would not have provided the Kummerfelds with any additional information and would therefore have been of little additional value. Thus, under the facts of the instant case, I find that the requirements of due process are satisfied with respect to the 2001 and 2004 restraining notices and the notices are therefore valid and enforceable. Because Cordius fails to explain why a second restraining notice as to Ms. Kummerfeld and KAI was issued in 2002, and fails to provide evidence that it was issued with leave of the court or clerk, this restraining notice appears invalid. However, I also find that the validity of the 2002 restraining notice does not materially affect the responsibilities of the Kummerfelds to Cordius or their obligations pursuant to the valid restraining orders.

### (3) Alleged Violations of the Restraining Notices

### (a) The Cape Cod Property

Cordius maintains that the Kummerfelds engaged in a number of activities in direct violation of the restraining notices issued as a result of the judgments against them. It argues that there were at least four violations with respect to the Cape Cod property. Cordius also maintains that both Kummerfelds had an interest in their Cape Cod property, as evidenced by their signatures on the mortgage that was in place at the time of the initial judgment in this case. (Pet'r Mem. at 6.) It explains that after the Second Circuit affirmed the judgment against KAI and Ms.

16

Kummerfeld, Cordius issued a restraining notice to Ms. Kummerfeld and KAI dated February 20, 2001. (Pet'r Mem. at 7; Wade Aff. ¶ 10.)

First, Cordius asserts that after service of that notice, Mr. Kummerfeld and Ms. Kummerfeld paid off their original mortgage and took out a $650,000 mortgage payable to Washington Mutual. (Pet'r Mem. at 7.) It argues that this mortgage violates C.P.L.R. § 5222(b) by increasing the mortgage from approximately $113,000 to $650,000 and interfering with the property. Cordius further argues that this constitutes a violation of C.P.L.R. § 5222 by both Elizabeth *and* Donald Kummerfeld, because Donald "unquestionably knew" that Elizabeth had an interest in the property, and Donald was aware that judgment had been entered against both his wife and his company. (*Id.*)

Secondly, Cordius asserts that one day after the Court's ruling piercing KAI's corporate veil, the Kummerfelds increased their mortgage by another $50,000, in violation of both the 2001 and 2002 restraining notices. (Pet'r Mem. at 7-8; Wade Aff. ¶ 16.)

Thirdly, Cordius argues that the Kummerfelds sought to avoid the collection of the judgments against them by filing a declaration of homestead on the Cape Cod property, subjecting it to Massachusetts homestead exemption laws. (Pet'r Mem. at 8; Wade Aff. ¶ 17, Ex. J.) Cordius maintains that there is evidence that the Kummerfelds turn off the water in the winter and rent out the house at least part of the summer. Cordius further asserts that the Cape Cod house is currently boarded up and has been for some time. (Pet'r Mem. at 8; Wade Aff. ¶¶ 7, 18, Ex. B at 64:9-11; 65:18-20; 67:23-69:7.) Cordius concludes that the Kummerfelds are perpetrating a fraud by claiming this home as their primary residence. It maintains that this was just another attempt to reduce the value of that property, this time by the homestead exemption, a

17

value of $500,000, and this action violates the restraining notices as it interfered with property in which Ms. Kummerfeld had an interest.[7] (Pet'r Mem. at 8.)

Fourthly, Cordius alleges that on January 9, 2006, the Kummerfelds attempted to further insulate their assets by giving a mortgage on their Cape Cod property to their son-in-law, John Brinitzer, in the amount of $262,490. (Pet'r Mem. at 8; Wade Aff. ¶ 19.) Cordius argues that the mortgage constitutes a fraudulent transfer under Massachusetts General Law. *See* MASS. GEN. L. CH. 109A, § 5.[8] Lastly, Cordius argues that the Kummerfelds further violate Massachusetts Law because the mortgage was granted to an individual who qualifies as an "insider" under the statute. *See id.* § 5(b)(1).

The Kummerfelds contest Cordius's allegations that they violated the restraining notices. They claim that the notices are ambiguous and subject to misinterpretation such that a layperson

---

[7]On March 13, 2009, outside of the briefing schedule for the instant motion, counsel for Cordius submitted an affidavit in further support of its motion for contempt. The affidavit maintains that Donald Kummerfeld still has failed to comply with his obligation to supplement discovery and provides the Court with a copy of the Kummerfeld's mortgage securing the property in Brewster, Massachusetts. (Aff. of Bradford S. Babbitt in Supp. of the Petitioner's Mot. for Contempt, Mar. 10, 2009, ¶¶ 6-7, 16, Ex. 1.) Cordius avers that the attached Second Home Rider confirms that the property was not the primary residence and thus the Kummerfelds should not be entitled to a Homestead exemption on that property. (*Id.*) Because this added information does not materially alter my recommendation and certification on the instant motion for contempt, I did not solicit a response from the Kummerfelds and they did not independently seek to submit one.

[8]In pertinent part, Massachusetts law provides that a "fraudulent transfer or obligation where creditor's claim arose before or after transfer or obligation" occurs where:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

    (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or . . . .

(b) In determining actual intent under paragraph (1) of subsection (a), consideration may be given, among other factors, to whether:

    (1) the transfer or obligation was to an insider; . . .

    (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; . . . .

MASS. GEN. L. CH. 109A, § 5.

18

may not understand that mortgaging may qualify as a prohibited action pursuant to the restraining notice. (Opp'n Mem. at 4.) They assert that any such mortgage could not prejudice Cordius's rights until such time as the current action is final and the appeal process is completed.[9] (*Id.* at 5.) The Kummerfelds claim that they are residents of the Commonwealth of Massachusetts, and aver that such a claim is not inconsistent with their position that they are reserving all rights as to whether to assert the homestead exemption at the time of any future foreclosure proceedings. (*Id.*) Finally, the Kummerfelds generally dispute that Donald Kummerfeld executed any mortgage or other document relating to the Cape Cod property after receipt of the restraining notice in August 2004, with the exception of a mortgage to his son-in-law, Brinitzer, as repayment for legal services to the Saterlee Stevens law firm incurred on behalf of the Kummerfelds and KAI. (Opp'n Mem. at 7; Kummerfeld Aff., Aug. 4, 2008, Ex. B-28.) The Kummerfelds also argue that Donald Kummerfeld should not be held retroactively accountable for the 2001 restraining notice, as it was not until the January 18, 2008 judgment in this action that Donald Kummerfeld was subjected to any personal liability. (Opp'n Mem. at 8.)

The Kummerfelds' argument that the restraining notices are ambiguous is not credible in this case. They are sophisticated individuals who ran a business and have been involved in the instant litigation for nearly a decade. Moreover, if there was any question concerning the parameters of the restraint, the Kummerfelds could have sought advice of counsel. I find that the Kummerfelds would understand that the restraint included prohibition on mortgaging property.

---

[9] The Kummerfelds also argue that the homestead exemption they filed could not possibly prejudice Cordius unless and until the Cape Cod property is foreclosed on and auctioned, which Cordius has not done and could only do so at great risk to itself as long as appeal was pending before the Second Circuit. (*Id.*) However, because the Second Circuit has now affirmed Judge Cote's judgment, this argument is moot.

While the Kummerfelds have sought to raise questions concerning individual acts, I find that their actions taken as a whole comprise contumacious behavior subject to appropriate sanction. I consider the various encumbrances on their Cape Cod property subsequent to judgment against them in determining an appropriate remedy for Cordius, as discussed below.

## (b) Kummerfeld's Expenses Instead of Paying Judgment

Cordius also addresses various purchases made by the Kummerfelds, which it asserts violate the restraining notices. Cordius maintains that the Kummerfelds spent $68,650 in KAI funds on U.S. Open tickets in 2001, after both Ms. Kummerfeld and KAI were subject to the 2001 restraining notice, and $74,940 in KAI funds for tickets the following year. (Pet'r Mem. at 9; Wade Aff. ¶¶ 20-22.) Cordius argues that the Kummerfelds' activities comprise violations of the restraining notices, and an attempt to shield Donald Kummerfeld's assets in the time before a judgment was entered against him personally.[10] Cordius also notes that after the corporate veil of KAI had been pierced, and judgment had been entered against Donald Kummerfeld individually and a restraining notice had been issued to him on August 2, 2004, he failed to turn over to Cordius his 2004 U.S. Open tickets. Cordius contends that other expenditures of the Kummerfelds comprise knowing and intentional violations of the 2001, 2002, and 2004 restraining orders. Cordius asserts that the Kummerfelds spent over one million dollars of KAI funds without paying anything to satisfy Cordius's judgment.[11] (Pet'r Mem. at 10; Wade Aff. ¶ 24.)

---

[10]Cordius asserts that Donald Kummerfeld switched the U.S. Open tickets to his name from KAI's in January 2003, as a means of protecting them from the reach of the restraining orders in the time before judgment was entered against him individually. (Pet'r Mem. at 9; Wade Aff. ¶ 23.)

[11]Cordius notes that evidence at trial established that close to $1.5 million flowed through KAI accounts after judgment had been entered and after Donald Kummerfeld had taken over the company. (Pet'r Reply at 3.)

20

These acts further support a finding that the Kummerfelds are in contempt for violating valid restraining notices and generally failing to comply in good faith with postjudgment procedures. The Kummerfelds were aware of their postjudgment obligations and despite the appeal pending on Donald Kummerfeld's liability, the majority of their monetary obligation was clear and unambiguous. Cordius presents substantial, consistent, and clear evidence of the Kummerfelds' general and specific noncompliance with court orders, and I am convinced that the Kummerfelds have not diligently attempted to comply and that their actions have been unreasonable and in bad faith.

## B. Appropriate Sanctions for a Finding of Civil Contempt

Federal courts have broad discretion to fashion remedies as equity requires, to ensure compliance with their orders. *See United States v. VISA U.S.A., Inc.*, No. 98 Civ. 7076 (BSJ), 2007 WL 1741885, at \*3 (S.D.N.Y. June 15, 2007). "[C]ivil contempt sanction[s] may . . . serve either to coerce the contemnor into future compliance with the court's order or to compensate the complainant for losses resulting from the contemnor's past noncompliance." *Nat'l Org. for Women*, 886 F.2d at 1352. Additionally, "[c]ompensatory sanctions should reimburse the injured party for its actual damages." *Id.* at 1353; *see also McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193 (1949) ("The measure of the court's power [to grant the relief that is necessary to effect compliance with its decrees] in civil contempt proceedings is determined by the requirements of full remedial relief."). The party seeking compensation carries the burden of proof as to those damages. For example, where attorneys' fees and costs are sought, the reasonableness and necessity of the hours spent must be established. *See N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983). Further, "courts have authority to enforce their lawful

21

orders through civil contempt, . . . [and] in selecting contempt sanctions, a court is obliged to use the 'least possible power adequate to the end proposed.'" *United States v. City of Yonkers*, 856 F.2d 444, 454 (2d Cir. 1988) (quoting *Shillitani v. United States*, 384 U.S. 364, 371 (1966) (quoting *Anderson v. Dunn*, 19 U.S. 61, 69 (1821))), *rev'd on other grounds*, 493 U.S. 265 (1990). In sum, civil contempt sanctions should be "remedial and compensatory, and not punitive." *Sunbeam Corp. v. Golden Rule Appliance Co.*, 252 F.2d 467, 469 (2d Cir.1958) (citing *United States v. United Mine Workers*, 330 U.S. 258, 304 (1947)). Any award granted as a result should be "for the benefit of the complainant." *Gompers*, 221 U.S. at 441; *see also Hicks v. Feiock*, 485 U.S. 624 (1988); *Sweater Bee by Banff, Ltd.*, 885 F.2d at 5.

In considering the imposition of coercive sanctions, the Court should determine what is necessary to secure future compliance and compensate the complaining party for the contemnor's noncompliance. To do so, the Court should consider the following factors: "'(1) the character and magnitude of the harm threatened by the continued contumacy, (2) the probable effectiveness of the sanction in bringing about compliance, and (3) the contemnor's financial resources and the consequent seriousness of the sanction's burden. . . . Arrest is an appropriate coercive sanction for civil contempt, so long as its purpose is not punitive but is instead to compel the contemnor to perform the required act.'" *Leadsinger*, 2006 WL 2266312, at *21 (quoting *Bank of Credit & Commerce Int'l (Overseas) Ltd. v. Tamraz*, No. 97 Civ. 4759 (SHS), 2006 WL 1643202, at *3 (S.D.N.Y. June 13, 2006)).

Cordius argues that "[e]ven in the absence of contempt, courts have broad equitable authority to fashion an appropriate remedy to ensure compliance with their orders." (Pet'r Mem. at 4 (referencing *Berger v. Heckler*, 771 F.2d 1556, 1569 (2d Cir. 1985)).) It further asserts that

22

the Kummerfelds' "extraordinary misconduct justifies extraordinary remedies." (*Id.* at 13.) It maintains that this misconduct includes Donald Kummerfeld's claims that Ms. Kummerfeld was not competent to testify at trial (*id.* at 14), and misrepresentations that they live on Cape Cod (*id.* at 15; Wade Aff. ¶¶ 7 & 18).

Cordius asks the Court to: (1) find the mortgage to John Brinitzer void as a fraudulent transfer; (2) find the homestead declaration void as fraudulent; (3) order Kummerfeld to quit-claim the Cape Cod house to Cordius; (4) order the Kummerfelds to make monthly payments to Cordius in the same amount as they are currently paying on the first mortgage on the Cape Cod house; and (5) order whatever other alternative relief—including incarceration pending curative action—that the Court finds just under the circumstances. Cordius asserts that all these actions can be accomplished within the bounds of, and employing, Massachusetts' law. (Pet'r Reply at 4.)

The Kummerfelds argue that Cordius has not identified any cases where the confiscation of real property in contravention of state law and conveyance to another party has been used as a sanction for civil contempt. (Opp'n Mem. at 3.) They maintain that Cordius's motion for contempt illustrates its own "contradictory and questionable conduct." (*Id.* at 8.) They note that Cordius knew Brinitzer's law firm represented Defendants during a portion of this action. (*Id.* at 8-9 (referencing Kummerfeld Aff., Ex. B-28).) The Kummerfelds assert that the sanctions Cordius demands are contradictory and are founded on baseless allegations of fraud perpetrated by the Kummerfelds, namely the homestead declaration, which the Kummerfelds argue they are entitled to, as they are bona fide residents of the Commonwealth of Massachusetts. (Opp'n Mem. at 9.) The Kummerfelds further argue that Federal Rule of Civil Procedure 69(a) makes clear that a quitclaim deed to the Cape Cod property should be sought under state proceedings. They also

23

question Cordius's demands for payment of the judgment irrespective of the Kummerfelds' ability to pay when Cordius refused the office furniture, art work, and tangible assets of KAI when the offices were closed. (*Id.*)

Upon my finding that the Kummerfelds should be held in civil contempt of my May 6, 2008 Order and of the restraining orders entered by Cordius in an effort to execute the judgment against the Kummerfelds, I recommend that the Kummerfelds be subject to the following civil contempt sanctions: 1) pay Cordius $10,000[12] for fees and costs related to filing the instant motion for contempt; and 2) the Kummerfelds shall provide Cordius with documentation as to the value of their Cape Cod property for each year from 2000 to present, including documentation explaining any material change in that value.

## IV. CONCLUSION

I hereby certify the foregoing facts and recommend that the Kummerfelds be found in contempt and subject to the aforementioned sanctions. The Parties are ordered to appear before Judge Cote at a date and time set by her chambers for Defendants to show cause why they should not be adjudged in contempt and sanctioned.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have ten (10) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Denise L.

---

[12]This amount represents compensation for twenty-five (25) hours of time at $400 per hour, which I deem reasonable for this application. (*See* Aff. in Supp. of App. for Award of Attorneys' Fees to the Pl., Feb. 5, 2008, ¶¶ 7-8.)

Cote, 500 Pearl Street, Room 1040, and to the chambers of the undersigned, Room 1970. Failure

to file timely objections shall constitute a waiver of those objections both in the District Court

and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150

(1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*);

28 U.S.C. § 636(b)(1) (West Supp. 1995); FED. R. CIV. P. 72, 6(a), 6(d).

**DATED: September 4, 2009**
**New York, New York**

        **Respectfully Submitted,**

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

Copies of this Report and Recommendation were sent to:

Counsel for Plaintiff
Michael B. Golden
Robinson & Cole, L.L.P.
780 Third Avenue, 4th Floor
New York, NY 10017

Counsel for Donald Kummerfeld
Kenneth Foard McCallion
McCallion & Associates LLP
24 West 40th Street
New York, NY 10018

Counsel for Defendants Elizabeth Kummerfeld and KAI

Sheldon Farber
162 West 54th Street Suite 8F
New York, NY 10019

Thomas William Caulfield
Law Office of Thomas W. Caulfield
5 Squires Avenue
E. Quogue, NY 11942