```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
                                   :
CORDIUS TRUST,                     :
                      Plaintiff,   :
                                   :
             -v-                   :
                                   :
ELIZABETH KUMMERFELD, KUMMERFELD   :
ASSOCIATES, INC.,                  :
                      Defendants.  :      99 Civ. 3200 (DLC)
                                   :
-----------------------------------X      OPINION & ORDER
                                   :
CORDIUS TRUST,                     :
                      Petitioner,  :
                                   :
             -v-                   :
                                   :
DONALD KUMMERFELD,                 :
                      Respondent.  :
                                   :
-----------------------------------X
```

Appearances:

For Plaintiff Cordius Trust:

Bradford. S. Babbitt
James A. Wade
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103

For Respondent Donald D. Kummerfeld and Defendants Elizabeth M.
Kummerfeld and Kummerfeld Associates, Inc.:

Kenneth F. McCallion
McCallion & Associates LLP
100 Park Avenue, 16th Floor
New York, NY 10017

DENISE COTE, District Judge:

The present motion for contempt and supplemental relief arises out of the efforts of Cordius Trust ("Cordius") to enforce judgments against Donald D. Kummerfeld ("Mr. Kummerfeld"), his wife, Elizabeth M. Kummerfeld ("Ms. Kummerfeld"), and their company, Kummerfeld Associates, Inc. ("KAI") (collectively, the "Kummerfelds").  In the almost ten years since the first judgment in April 2000, Cordius has been unable to collect a single cent from the Kummerfelds.  Cordius now seeks an order holding the Kummerfelds in contempt for (1) failing to comply with a May 6, 2008 discovery order issued by Magistrate Judge Ronald L. Ellis, and (2) for violations of restraining orders served on the Kummerfelds pursuant to New York Civil Practice Law and Rules ("N.Y.  C.P.L.R.") § 5222.

Cordius requests that the Court provide the following relief based on its inherent authority to effectuate enforcement of its judgments: (1) declare a mortgage on the Kummerfelds' Cape Cod property, located in Brewster, Massachusetts (the "Cape Cod property"), given to John Brinitzer, their son-in-law, void as a fraudulent transfer; (2) declare a Homestead Declaration filed by the Kummerfelds in Massachusetts void as fraudulent; (3) order the Kummerfelds to quit-claim the Cape Cod property to Cordius; (4) order the Kummerfelds to make monthly payments to Cordius in the same amount as they currently pay on the primary

mortgage on the Cape Cod property; and (5) order whatever other alternative relief -- including incarceration pending curative action -- that the Court finds just and proper.

The Court referred Cordius' motion to Magistrate Judge Ellis.  On September 4, 2009, Magistrate Judge Ellis issued a Report and Recommendation in which he recommended that the Kummerfelds be held in contempt, but denied the relief sought by Cordius.  The Kummerfelds filed objections to the Report and Recommendation on September 17.  Cordius filed its reply to the Kummerfelds' objections on October 8, and separately objected to the alternative relief recommended by Magistrate Judge Ellis. This Court held a hearing on Cordius' motion on October 15 and reserved decision.  For the reasons stated herein, the Court now finds the Kummerfelds in contempt and grants Cordius certain relief as an exercise of this Court's equitable powers to enforce its judgments.


BACKGROUND

The Court assumes familiarity with all prior decisions in this action and sets forth here only a summary of the events and rulings most pertinent to the present motion.  Cordius originally filed a complaint against Ms. Kummerfeld and KAI on May 4, 1999, seeking payment on a promissory note executed by Ms. Kummerfeld, on behalf of herself and KAI.  On April 11,

2000, following a one-day bench trial on the enforceability of the promissory note, the Court awarded Cordius judgment (the "April 2000 Judgment") in the amount of $1,418,000 plus interest and reasonable attorneys fees and costs.  This judgment was affirmed by the Second Circuit in an order dated November 30, 2000.  See Cordius Trust v. Kummerfeld Assocs., Inc., 242 F.3d 364 (2d Cir. 2000).

In its efforts to collect the April 2000 Judgment against Ms. Kummerfeld and KAI, Cordius served both with a restraining notice pursuant to N.Y. C.P.L.R. § 5222(a) and (b) on February 20, 2001.[1]  While Cordius was unable to enforce the April 2000 Judgment, the Kummerfelds continued to spend KAI funds to support their lifestyle, including the purchase of U.S. Open tennis tickets.  In 2001 and 2002 alone, the Kummerfelds spent over $140,000 in KAI funds on U.S. Open tickets.  The Kummerfelds continued to purchase U.S. Open tickets annually, at least through 2006 when they spent over $64,000 on tickets.[2]  In addition, the Kummerfelds spent over $1,000,000 of KAI funds between March 2001 and April 2006 on magazines, cable

---

[1] Cordius served a second restraining notice on Ms. Kummerfeld and KAI in September 2002.  This second notice is immaterial to the Court's analysis.

[2] Mr. Kummerfeld testified at the October 15, 2009 hearing that other individuals, such as Robert Teufnel, shared in the use of these tickets in 2006 and perhaps 2007, for which the Kummerfelds were reimbursed.  There is evidence that Mr. Teufnel paid the Kummerfelds approximately $13,800 towards the cost of the 2006 tickets.

television, dining clubs, telephones, credit card bills, vacation, reserved car parking in Manhattan, and other personal expenditures.

Cordius has identified one substantial asset owned by Mr. and Ms. Kummerfeld:  the Cape Cod property.  In June 2001, Mr. and Ms. Kummerfeld paid off the original mortgage on that property, of which approximately $113,000 remained, and took out a new $650,000 mortgage.  None of the proceeds from the new mortgage were paid to Cordius to satisfy the April 2000 Judgment.

Cordius' post-judgment discovery efforts to identify other assets of the Kummerfelds were consistently thwarted.  On March 25, 2003, Cordius moved pursuant to Federal Rule of Civil Procedure 69 for a writ of execution and turnover order to enforce the April 2000 judgment and for an order piercing the corporate veil of KAI to render Mr. Kummerfeld's assets amenable to attachment.  The Court granted Cordius' Rule 69 motion on March 30, 2004, see Cordius Trust v. Kummerfeld, No. 99 Civ. 3200, 2004 WL 616125 (S.D.N.Y. Mar. 30, 2004), and judgment was entered against Mr. Kummerfeld on April 30, 2004 (the "April 2004 Judgment").  One day after the Court granted Cordius' Rule 69 motion, Mr. and Ms. Kummerfeld increased the primary mortgage on the Cape Cod property to $700,000.  Again, none of the proceeds were remitted to Cordius.  On April 8, 2004, Mr. and

Ms. Kummerfeld filed a "Declaration of Homestead" on the Cape Cod property pursuant to Mass. Gen. L. ch. 188, § 1 thereby subjecting the property to the statutory exemption of $500,000, and reducing the equity available in the property to satisfy the judgments.

After the entry of judgment against Mr. Kummerfeld in his individual capacity, Cordius filed a motion for leave to register the April 2000 and April 2004 judgments with the U.S. District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1963, which was granted on August 4, 2004. Cordius also served on Mr. Kummerfeld a restraining notice pursuant to N.Y. C.P.L.R. § 5222(a) and (b) on July 19, 2004. On August 2, 2004, Cordius served on Mr. Kummerfeld a Notice to Judgment Debtor pursuant to N.Y. C.P.L.R. § 5222(d) and (e), with a copy of the July 19, 2004 restraining notice previously served. After the restraining notice was served, Mr. Kummerfeld failed to turn over to Cordius the 2004 U.S. Open tickets that he had purchased; those tickets were specifically identified in the notice. In addition, between May 10, 2005 and July 11, 2007, more than $420,000 was deposited into the Kummerfelds' joint checking account, of which approximately $269,000 was deposited by Ms. Kummerfeld. None of this money was used to satisfy the judgments. On January 9, 2006, Mr. and Ms. Kummerfeld gave a mortgage on the Cape Cod property to their son-in-law, John

Brinitzer ("Mr. Brinitzer"), in the amount of $262,490,
allegedly to repay legal fees that Mr. Brinitzer paid on their
behalf.

Mr. Kummerfeld appealed the April 2004 Judgment.  Following
a partial reversal by the Second Circuit in an order dated
October 4, 2005, see Cordius Trust v. Kummerfeld, 153 Fed. App'x
761 (2d Cir. 2005), a jury trial was held in January 2008 on
Cordius' action for writ of execution and turnover order
piercing the corporate veil of KAI.  Evidence at trial
established that nearly $1.5 million flowed through KAI's bank
accounts after the April 2000 Judgment was entered and after Mr.
Kummerfeld had assumed sole control of the company.  This
despite the fact that KAI ceased "active business operations" in
2002 according to Ms. Kummerfeld's testimony at trial.  On
January 18, 2008, the jury rendered a verdict in favor of
piercing the corporate veil in order to render the assets of Mr.
Kummerfeld amendable to attachment.  On January 25, 2008, the
Court entered a judgment ("the January 2008 Judgment") awarding
Cordius $2,656,796.02, plus interest.  See Cordius Trust v.
Kummerfeld, No. 99-Civ-3200, 2008 WL 216405 (S.D.N.Y. January
25, 2008).  The Court granted Cordius' motion to register the
January 2008 judgment with the District of Massachusetts
pursuant to 28 U.S.C. § 1963 on February 11, 2008.  The Court
subsequently entered a judgment granting attorneys' fees and

costs of $327,595.00 to Cordius on February 29, 2008.  Mr.
Kummerfeld appealed the January 2008 Judgment, but not the award
of attorneys' fees.  On June 2, 2009, the Second Circuit
affirmed the January 2008 Judgment.  See Cordius Trust v.
Kummerfeld, No. 08-0939-CV, 2009 WL 1528762 (2d Cir. June 2,
2009).

     To this day, Cordius has been unable to enforce the January
2008 Judgment against the Kummerfelds.  It sought additional
documentary discovery from Mr. Kummerfeld concerning the
Kummerfelds' assets, particularly the Cape Cod property.
Cordius served Mr. Kummerfeld with post-judgment interrogatories
and requests for production on January 22, 2008.  Mr. Kummerfeld
responded to the interrogatories and requests for production on
March 5, 2008, producing a total of four pages of documents,
none of which were originals.  Cordius deposed Mr. Kummerfeld on
April 23, 2008, where he testified that he possessed many of the
documents previously requested by Cordius.

     At a conference[3] with both parties on May 6, 2008,
Magistrate Judge Ellis orally ordered Mr. Kummerfeld, who
attended the conference, to produce all documents identified and
requested during his April 23, 2008 deposition within two weeks

---

[3] Mr. Kummerfeld objects that Magistrate Judge Ellis referred to
the May 6, 2008 conference as a "hearing" in his August 5, 2009
Opinion and Order.  This inconsistency does not affect the
Court's analysis.

of his receipt of a list of the documents from Cordius ("the May 6, 2008 Discovery Order").[4]  Magistrate Judge Ellis also ordered Cordius to provide a status update as to Mr. Kummerfeld's compliance with the May 6, 2008 Discovery Order by May 30, 2008.[5] On May 9, 2008, Cordius provided Mr. Kummerfeld with a written list of fifty-five categories of documents that had been requested during his April 23, 2008 deposition.  In the May 9 document, Cordius stated explicitly in the first paragraph that it was providing the list pursuant to Magistrate Judge Ellis' May 6, 2008 Discovery Order requiring Mr. Kummerfeld to produce all of the documents within two weeks.  Neither Mr. Kummerfeld nor his counsel objected to Cordius' reference to the May 6, 2008 Discovery Order and its two-week deadline.

Mr. Kummerfeld requested an extension of time by which to respond, to which Cordius agreed.  On May 27, 2008, the deadline, Mr. Kummerfeld responded by producing 114 pages of documentation that covered, in whole or in part, eight of the fifty-five requested categories of documents.  On May 30, 2008, Cordius sent a status report to Magistrate Judge Ellis, as

---

[4] A Minute Entry for the May 6, 2008 conference indicates that the parties were waiting for a transcript of the April 23, 2008 deposition, which explains why Magistrate Judge Ellis gave Mr. Kummerfeld two weeks to comply from the date that he received a list of requested documents, as opposed to two weeks from the date of the conference.

[5] Only the order requesting a status report was memorialized in writing.

required, and provided a copy to Mr. Kummerfeld's counsel.
Cordius' May 30 letter again referenced the May 6, 2008
Discovery Order, stating:  "Per your order, Mr. Kummerfeld was
to have produced that additional documentation within two weeks
of his counsel's receipt of [the May 9] letter, which would have
been Tuesday, May 27, 2008."  The May 30 letter indicated to
Magistrate Judge Ellis that Mr. Kummerfeld had failed to comply
with the May 6, 2008 Discovery Order.  Neither Mr. Kummerfeld
nor his counsel raised any objection to Cordius' depiction of
the order or its assertion that Mr. Kummerfeld had failed to
comply.  The same day, Cordius provided Mr. Kummerfeld's counsel
with a memorandum detailing the documents that Mr. Kummerfeld
had failed to produce in accordance with the May 6, 2008
Discovery Order.

On July 18, 2008, Cordius filed the present motion for an
order holding the Kummerfelds in contempt and seeking the relief
to enforce the judgments described above.  The Court referred
the motion to Magistrate Judge Ellis for consideration.  On
August 4, 2008, the same day that the Kummerfelds filed their
opposition to Cordius' motion, Mr. Kummerfeld produced 522
additional pages of documentation in response to the May 6, 2008
Discovery Order.  In his opposition brief, Mr. Kummerfeld
claimed that his August 4, 2008 document production
substantially satisfied his obligations pursuant to the order.

Notably, Mr. Kummerfeld did not argue in his opposition that Magistrate Judge Ellis never issued the May 6, 2008 Discovery Order, nor did he dispute Cordius' assertion in their motion and supporting affidavit that the order imposed a two-week deadline. A year later, on August 5, 2009, Mr. Kummerfeld filed another affidavit stating that the document production was "complete."

On September 4, 2009, Magistrate Judge Ellis issued a Report and Recommendation in which he certified facts to this Court pursuant to 28 U.S.C. § 636(e) and recommended that the Kummerfelds be held in contempt.[6]  Magistrate Judge Ellis recommended that instead of the relief requested by Cordius, the Court provide the following relief:  (1) the Kummerfelds should pay Cordius $10,000 for fees and costs related to filing the instant motion for contempt; and (2) the Kummerfelds should provide Cordius with documentation as to the value of their Cape Cod property for each year from 2000 to present.  The Kummerfelds filed their objections to the Report and Recommendation on September 17.  Cordius filed its reply to the Kummerfelds' objections on October 8, and separately objected to the alternative relief recommended by Magistrate Judge Ellis.

---

[6] Magistrate Judge Ellis originally issued an Opinion and Order holding the Kummerfelds in contempt on August 5, 2009.  On August 17, the Kummerfelds objected that Magistrate Judge Ellis had exceeded his authority by issuing an opinion.  On September 4, 2009, Magistrate Judge Ellis withdrew his Opinion and Order and issued his certification.

At a hearing held by the Court on October 15, 2009, the
Court advised the parties that it was considering granting the
relief requested by Cordius, with certain modifications, which
went beyond traditional contempt sanctions.  The Court stressed
that given the Kummerfelds' obstruction of Cordius' efforts to
enforce the judgments, typical contempt sanctions, such as
fines, might be ineffective in coercing the Kummerfelds'
compliance.  The Court provided both parties an opportunity to
present additional evidence and arguments.

At the hearing, Mr. Kummerfeld testified, <u>inter alia</u>, that
given his age and the events of the last two years, he "could
not recall" the precise contours of the May 6, 2008 Discovery
Order, but believed that he was only required to produce the
documents on a rolling basis.  He testified that his
recollection was that Magistrate Judge Ellis had instructed him
to "make [his] best efforts to secure and transmit the
documents."[7]

Mr. Kummerfeld further testified that the Kummerfelds'
financial position has deteriorated significantly over the past
year.  Mr. Kummerfeld asserted that he is unemployed, their only
source of income is Social Security, they are barely able to

_____

[7] Mr. Kummerfeld's counsel proffered that the attorney who
attended the May 6, 2008 conference with Mr. Kummerfeld also
could not recall whether Magistrate Judge Ellis had specified a
two-week deadline.

afford basic living expenses, and they are therefore dependent on the charity of friends and family.  He testified that he and Ms. Kummerfeld were evicted from their Manhattan apartment on or about August 14, 2009 and presently live in a New Jersey apartment paid for by others.  In addition, Mr. Kummerfeld testified that the bank holding the primary mortgage on the Cape Cod property has initiated foreclosure proceedings in Massachusetts Land Court for failure to make mortgage payments since approximately August 2008.  The Cape Cod property is the Kummerfelds' only known remaining asset.

On October 21, 2009, Mr. Kummerfeld filed a Chapter 7 Bankruptcy Petition and requested a stay of the proceedings in this Court.  Neither Ms. Kummerfeld nor KAI have filed for bankruptcy.


DISCUSSION

1.  Civil Contempt

A federal district court has "the inherent power to hold a party in civil contempt in order to enforce compliance with an order of the court or to compensate for losses or damages." Powell v. Ward, 643 F.2d 924, 931 (2d Cir. 1981) (citing McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949)).  Likewise, a district court may hold a party in contempt for violating an order of a magistrate judge.  See 28 U.S.C. § 636(e)(6)

13

(providing that upon certification of facts by the magistrate judge, the "district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge."). A district court must review de novo "those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

In the discovery context, "[i]f a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders," Fed. R. Civ. P. 37(b)(2)(A), including "treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination." Fed. R. Civ. P. 37(b)(2)(A)(vii). Similarly, in the enforcement context, a district court may issue a contempt order where a party has failed to pay a monetary sanction issued against it. See, e.g., United States v. Chusid, 372 F.3d 113, 116-17 (2d Cir. 2004) (defendant incarcerated for failure to pay restitution and fine imposed by criminal judgment); Huber v. Marine Midland Bank, 51 F.3d 5, 10 (2d Cir. 1995) (party threatened with incarceration for failure to pay sanctions imposed in civil proceeding). Under Article 52 of the N.Y. C.P.L.R., which applies to the

14

enforcement of the judgments against the Kummerfelds, "refusal or willful neglect to obey a restraining notice is punishable as contempt." N.Y. C.P.L.R. § 5251.

To hold a party in contempt, the "moving party [must] establish[] by clear and convincing evidence that the alleged contemnor violated the district court's edict." Latino Officers Ass'n City of New York, Inc. v. City of New York, 558 F.3d 159, 164 (2d Cir. 2009). "Specifically, the movant must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." Id. (citation omitted). "It need not be established that the violation was willful." Paramedics Electromedicina Comercial, Ltda v. GE Medical Systems, 369 F.3d 645, 655 (2d Cir. 2004). In the context of civil contempt, the clear and convincing standard requires "a quantum of proof adequate to demonstrate a reasonable certainty that a violation occurred." Levin v. Tiber Holding Corp., 277 F.3d 243, 250 (2d Cir. 2002) (citation omitted).

Civil contempt sanctions may serve dual purposes, namely "to secure future compliance with court orders and to compensate the party that has been wronged." Paramedics, 369 F.3d at 657 (citation omitted). Civil contempt sanctions may not be imposed punitively. Id. Where the contempt sanction is coercive, a

district court has "broad discretion to design a remedy that will bring about compliance." Id. (citation omitted); see also McComb v. Jacksonville Paper Co., 336 U.S. 187, 193-94 (1949) ("The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief.") Still, "a court is obliged to use the least possible power adequate to the end proposed." Spallone v. United States, 493 U.S. 265, 276 (1990) (citation omitted). In selecting sanctions, the court is guided by "the character and magnitude of the harm threatened by continued contumacy, the probable effectiveness of any suggested sanction in bringing about compliance, and the contemnor's ability to pay." Paramedics, 369 F.3d at 658 (citation omitted).

"A contemnor may be excused from the burden of a civil contempt sanction if it lacks the financial capacity to comply; but the contemnor bears the burden of production in raising such a defense." Id. (citing United States v. Rylander, 460 U.S. 752, 757 (1983)). To meet this burden, the contemnor must "establish his inability [to pay] clearly, plainly, and unmistakably." Chusid, 372 F.3d at 117 (citing Huber, 51 F.3d at 10). When a party is absolutely unable to comply due to poverty or insolvency, inability to comply is a complete defense. See Badgley v. Santacroce, 800 F.2d 33, 37 (2d Cir.

16

1986).


2.    Supplemental Enforcement Proceedings

Distinct from its contempt powers, a federal district court

possesses inherent authority to effectuate enforcement of its

judgments.  Federal Rule of Procedure 69(a)(1) governs the

execution of money judgments awarded by a federal district

court.  Rule 69(a)(1) states:

> A money judgment is enforced by a writ of execution,
> unless the court directs otherwise. The procedure
> on execution -- and in proceedings supplementary to and
> in aid of judgment or execution -- must accord with
> the procedure of the state where the court is located,
> but a federal statute governs to the extent it
> applies.

Fed. R. Civ. P. 69(a)(1); see also Smith ex rel. Estate of Smith

v. Fed. Reserve Bank of New York, 346 F.3d 264, 269 (2d Cir.

2003).  Rule 69 "provides a mechanism for parties to seek the

Court's aid in executing its judgments."  Plunket v. Estate of

Doyle, No. 99-Civ.-11006(KMW), 2009 WL 73146, at *2 (S.D.N.Y.

Jan. 12, 2009).  In New York, the execution of money judgments

is governed by N.Y. C.P.L.R. Article 52, which sets forth the

procedures for a writ of execution.  Smith, 346 F.3d at 269.

Likewise, "proceedings supplementary to and in aid of judgment

or enforcement" must comply with state law and procedures.  Fed.
R. Civ. P. 69(a)(1).[8]

A federal district court retains jurisdiction over
supplementary proceedings to effectuate enforcement of its
judgments.  See Peacock v. Thomas, 516 U.S. 349, 356 (1996)
("Without jurisdiction to enforce a judgment entered by a
federal court, the judicial power would be incomplete and
entirely inadequate to the purposes for which it was conferred
by the Constitution.") (citation omitted).  "[A] court that has
concluded its adjudication of the merits of a case within its

---

[8] Rule 69(a)(1) contemplates that a money judgment may be
enforced by some means other than a writ of execution if "the
court directs otherwise."  This provision has not been construed
by the Second Circuit.  See Koehler v. Bank of Bermuda Ltd., No.
M18-302(CSH), 2005 WL 551115, at *13 (S.D.N.Y. Mar. 9, 2005),
overruled on other grounds, 577 F.3d 497 (2d Cir. Aug 20, 2009);
see also Motorola Credit Corp. v. Uzan, 288 F.Supp.2d 558, 561
(S.D.N.Y. 2003).  The First Circuit, however, has ruled that the
provision should be construed narrowly.  See Aetna Casualty &
Surety Co. v. Markarian, 114 F.3d 346 (1st Cir. 1997); Gabovitch
v. Lundy, 584 F.2d 559 (1st Cir. 1978).  "In particular, the
'court directs otherwise' language should only be invoked in
those 'extraordinary circumstances,' where 'established
principles warrant equitable relief,' enforceable by the court's
contempt powers."  Motorola Credit Corp., 288 F.Supp.2d at 561
(citing Aetna Casualty, 114 F.3d at 349 n.4; Gabovitch, 584 F.2d
at 561).  In a footnote, the First Circuit also cautioned that
"difficulties in enforcing the judgment due to the location of
the assets and the uncooperativeness of the judgment debtor are
not the types of extraordinary circumstances which warrant
departure from the general rule that money judgments are
enforced by means of writs of execution rather than by resort to
the contempt powers of the courts."  Aetna Casualty, 114 F.3d at
349 n.4 (citing Hilao v. Estate of Marcos, 95 F.3d 848, 855 (9th
Cir. 1996)).

jurisdiction by entering a final judgment retains authority to take action with respect to some collateral matters related to the case." Covanta Onondaga Ltd. v. Onondaga County Resource Recovery Agency, 318 F.3d 392, 396 (2d Cir. 2003). Thus, for instance, a party attempting to collect a judgment may bring a fraudulent conveyance claim against a third party pursuant to the court's enforcement jurisdiction even if there is no independent jurisdictional basis. See Epperson v. Entertainment Express, Inc., 242 F.3d 100, 107 (2d Cir. 2001).


3.    Grounds for Contempt

      Cordius contends that Mr. Kummerfeld is in contempt of the May 6, 2008 Discovery Order. It also contends that the Kummerfelds are in contempt for violating restraining orders served pursuant to N.Y. C.P.L.R. § 5222.

      a.    Failure to Comply with the May 6, 2008 Discovery Order

      The first basis for contempt is Mr. Kummerfeld's failure to comply with the May 6, 2008 Discovery Order issued by Magistrate Judge Ellis. There is clear and convincing evidence of the order and the two-week deadline it imposed. In the Report and Recommendation, Magistrate Judge Ellis states that "[d]uring the May 6, 2008 Settlement Conference, [he] orally ordered that Donald Kummerfeld provide to Cordius all documents identified and requested during his April 23, 2008 deposition within

19

fourteen (14) days of his receipt of a list of the requested documents." Magistrate Judge Ellis describes his oral order as "clear and definite." Cordius' counsel has also submitted affidavits confirming Magistrate Judge Ellis' account of the May 6, 2008 conference and the Discovery Order. The Court finds that although Magistrate Judge Ellis issued the order orally, it was nonetheless "clear and unambiguous." Latino Officers, 558 F.3d at 164. A party may be subject to contempt for violation of an oral order of the court as long as the requirements for contempt are otherwise satisfied. See, e.g., Town of Islip v. Eastern Air Lines, Inc., 793 F.2d 79, 83 (2d Cir. 1986).

The proof of Mr. Kummerfeld's noncompliance with the May 6, 2008 Discovery Order is "clear and convincing." Latino Officers, 558 F.3d at 164. The order required Mr. Kummerfeld to produce documents that he admitted to having in his possession at his April 23, 2008 deposition within two weeks. This was not an onerous requirement. On May 27, 2008, after seeking and receiving an extension of the deadline from Cordius, Mr. Kummerfeld produced only 114 pages of documentation that covered, in whole or in part, only eight of the fifty-five categories of requested documents. When Cordius sent a letter and memorandum to Mr. Kummerfeld's counsel on May 30, 2008 outlining the categories of documents that Mr. Kummerfeld failed to produce, neither Mr. Kummerfeld nor his counsel responded.

Not until August 4, 2008 did Mr. Kummerfeld produce an additional 522 pages of documentation.  The fact that Mr. Kummerfeld produced these documents to Cordius nearly two months after the deadline -- and only after Cordius had filed its motion for contempt -- amply demonstrates his failure to comply with the May 6, 2008 Discovery Order.

Furthermore, Mr. Kummerfeld has not "diligently attempted to comply" with the May 6, 2008 Discovery Order "in a reasonable manner."  Latino Officers, 558 F.3d at 164.  Mr. Kummerfeld testified that he worked diligently and in good faith to produce the required documents to Cordius on a rolling basis.  Given his busy travel schedule in 2008 and the fact that many of the documents were not in his possession, he asserts that he was constrained in what he could realistically produce to Cordius in a short period of time.  Mr. Kummerfeld's behavior belies his assertions of good faith.  Mr. Kummerfeld admitted at the October 15, 2009 hearing that after receiving the list of requested documents from Cordius, he spent no more than one day in May 2008 searching the warehouse where many of the documents were stored.  This despite the fact that his calendar for May 2008 indicates that he was in New York for at least eight days and chose to spend the three-day Memorial Day weekend in Cape Cod before returning to London.

After producing only a small fraction of the requested documents by the deadline, Mr. Kummerfeld provided no more documents to Cordius until over two months later -- after Cordius had filed its motion for contempt. Mr. Kummerfeld has represented to the Court on multiple occasions that the August 4, 2008 document production satisfied his document production obligations pursuant to the May 6, 2008 Discovery Order. At the October 15, 2009 hearing, however, he testified that he was not sure what he meant by the word "complete" in his August 5, 2009 affidavit in which he attested to satisfying his document production obligations. Mr. Kummerfeld also conceded that even as of today he may not have produced all of the documents requested by Cordius, including his 2007 tax returns. Mr. Kummerfeld's counsel argued at the hearing that Cordius was not prejudiced by Mr. Kummerfeld's failure to produce the bulk of the documents until August 2008 because no new assets were identified and Cordius took no additional steps to execute on the Cape Cod property. Lack of prejudice to the other party, however, is not a defense to contempt of a court order.

Mr. Kummerfeld's principal defense is that Magistrate Judge Ellis did not issue the May 6, 2008 Discovery Order, or if he did, it was ambiguous as to what documents were to be produced and by when. Remarkably, this is the first time that Mr. Kummerfeld has disputed the existence of the order or its

requirements.  Mr. Kummerfeld never requested clarification from
Magistrate Judge Ellis.  Nor did he raise this argument in the
briefing on the motion for contempt before Magistrate Judge
Ellis.  In its motion, Cordius described the order as requiring
Mr. Kummerfeld to comply with the document requests made at his
deposition "within two weeks of the receipt" of the letter
Cordius sent on May 9, 2009.  Indeed, Mr. Kummerfeld
specifically acknowledged the existence of the May 6, 2008
Discovery Order in his August 4, 2008 opposition brief.  In the
brief, he states that "contemporaneous with this memorandum, I
have submitted the balance of available information and
documents responsive to outstanding discovery requests pursuant
to the court's order dated May 6, 2008."  Mr. Kummerfeld's
failure to raise any dispute regarding the terms of the May 6,
2008 Discovery Order before Magistrate Judge Ellis completely
undermines the credibility of his objection.

Mr. Kummerfeld also points to a purported discrepancy in
Magistrate Judge Ellis' description of the Discovery Order in
the August 5, 2009 Opinion and Order and the Report and
Recommendation.  Mr. Kummerfeld fails to note, however, that
both the Opinion and Order and the Report and Recommendation
clearly state that on May 6, 2008, Magistrate Judge Ellis
"ordered Kummerfeld to produce all documents identified and
requested during his April 23, 2008 deposition within two weeks

23

of his receipt of a list of the requested documents." Thus, there is no discrepancy between Magistrate Judge Ellis' two descriptions of his order.

Notably, Mr. Kummerfeld has not submitted any sworn testimony disputing the existence of the May 6, 2008 Discovery Order and its two-week deadline. At the October 15, 2009 hearing, Mr. Kummerfeld testified only that he "could not recall" the precise contours of the order or whether there was a firm deadline. His recollection was that Magistrate Judge Ellis had instructed him to make his best efforts to produce the documents on a rolling basis. Given the Kummerfelds' history of obstructing Cordius' discovery efforts, it is unlikely that Magistrate Judge Ellis would have issued such an open-ended order, and there is no evidence to support an order with those terms. There would also have been no reason for Mr. Kummerfeld to request an extension from Cordius if the two-week deadline did not exist, or if Mr. Kummerfeld were unaware of such a deadline.[9] Weighed against the clear and convincing evidence supporting the existence of the May 6, 2008 Discovery Order and its two-week deadline, Mr. Kummerfeld's testimony at the hearing is insufficient to alter the Court's finding.

---

[9] The proffer of Mr. Kummerfeld's counsel at the hearing also does not call into question the existence of the order or its two-week deadline.

Based on the facts certified by Magistrate Judge Ellis, the evidence presented in the parties' submissions, and Mr. Kummerfeld's testimony at the October 15, 2009 hearing, the Court finds that the May 6, 2008 Discovery Order was clear and unambiguous.  There is clear and convincing evidence of Mr. Kummerfeld's noncompliance with the order and of his failure to attempt diligently to comply.  Accordingly, Cordius has carried its burden to show that Mr. Kummerfeld is in contempt for violating the May 6, 2008 Discovery Order.

      b.   Violations of the Restraining Orders

The second basis for contempt is the Kummerfelds' repeated violations of the restraining notices served by Cordius pursuant to N.Y. C.P.L.R. § 5222.  The restraining notices served by Cordius on Ms. Kummerfeld and KAI in February 2001 and on Mr. Kummerfeld in August 2004 restricted their ability to alienate or otherwise interfere with any property in which they held an interest.  See N.Y. C.P.L.R. § 5222(b).  The notices clearly laid out the restrictions imposed by § 5222(b) and in fact quoted from the statute itself.  The Court finds that these obligations were therefore "clear and unambiguous." Latino Officers, 558 F.3d at 164.

In spite of these obligations, there is "clear and convincing" evidence, id., that Mr. and Ms. Kummerfeld

deliberately interfered with the execution of the judgments and repeatedly violated the restraining notices. First, the Kummerfelds spent a significant amount of KAI's money since 2001 that could have partially satisfied the judgments against them. Nearly $1.5 million flowed through KAI's bank accounts after the April 2000 Judgment was entered and after Mr. Kummerfeld had assumed control of the company. In 2001 and 2002 alone, the Kummerfelds spent over $140,000 in KAI funds on U.S. Open tickets in violation of the February 2001 restraining notice against KAI, and continued to purchase U.S. Open tickets annually until at least 2006. After judgment was entered against Mr. Kummerfeld individually in April 2004, he failed to turn over to Cordius the 2004 U.S. Open tickets in direct violation of the August 2004 restraining notice. The Kummerfelds spent over $1,000,000 of KAI funds between March 2001 and April 2006 on magazines, cable television, dining clubs, telephones, credit card bills, vacation, reserved car parking in Manhattan, and other personal expenditures. Tellingly, the Kummerfelds used none of KAI's funds to satisfy the judgments obtained by Cordius.

The Kummerfelds offer virtually no defense or explanation for these expenditures, except a conclusory assertion that they did not constitute violations of the restraining orders. Mr. Kummerfeld testified at the October 15, 2009 that he and Ms.

Kummerfeld were reimbursed by friends and other individuals who used a portion of the U.S. Open tickets that they purchased in 2006 and perhaps 2007. As evidence of this, Mr. Kummerfeld pointed to a deposit into Mr. and Ms. Kummerfeld's joint checking account of about $13,800 in 2006. In addition, Mr. Kummerfeld's counsel argued at the hearing that there have been no frivolous expenditures, like the U.S. Open tickets, in the last two years. This argument, however, implies that the Kummerfelds were making such frivolous expenditures in prior years when the restraining notices against the Kummerfelds were in effect.

Second, the Kummerfelds encumbered their Cape Cod property on multiple occasions since the entry of the April 2000 Judgment. The June 2001 and March 2004 mortgages, the April 2004 Declaration of Homestead in Massachusetts, and the January 2006 Brinitzer mortgage -- all jointly signed by Mr. and Ms. Kummerfeld -- violated the February 2001 restraining notice served on Ms. Kummerfeld insofar as they further encumbered her interest in the Cape Cod property.

Moreover, the filing of a "Declaration of Homestead" in Massachusetts was a mere fiction designed to shield the Kummerfelds' only remaining asset and thwart the enforcement of this Court's judgments. In the "Second Home Rider" to the June 2001 mortgage on the Cape Cod property, Mr. Kummerfeld attested

that the Cape Cod property is only a second home, not a primary residence. Cordius has introduced evidence that the windows on the Cape Cod property are boarded up and that the Kummerfelds have the water turned off during the winter months. Mr. Kummerfeld's daily calendar for 2008 establishes that the Kummerfelds visited the Cape Cod property only thirteen days between January 1 and August 3, 2008. Mr. Kummerfeld testified at his 2008 trial and at the October 15, 2009 hearing that he resides in New York when he is not in London or otherwise traveling abroad for business. In addition, Mr. Kummerfeld testified that he and Ms. Kummerfeld were evicted from their apartment in Manhattan on or about August 14, 2009 and presently live in an apartment in New Jersey. The Court therefore finds that the Cape Cod property is not -- and never was -- the Kummerfelds' primary residence. Accordingly, the Court finds that the April 2004 homestead declaration was fraudulent.[10]

---

[10] Cordius also contends that the Brinitzer mortgage constitutes a fraudulent conveyance under Mass. Gen. L. ch. 109A, § 5. Specifically, Cordius argues that the Kummerfelds have failed to produce sufficient evidence of the loan from Mr. Brinitzer, who is also an insider under the statute. Mass. Gen. L. ch. 109A, § 5(b)(1). Further, the mortgage was granted to Mr. Brinitzer while Cordius' case was pending against Mr. Kummerfeld and long after judgment had entered against Ms. Kummerfeld. See Mass. Gen. L. ch. 109A, § 5(b)(4). At this juncture, the Court does not make any finding concerning whether the Brinitzer mortgage constitutes a fraudulent conveyance. Mr. Brinitzer will be given an opportunity to appear at a hearing to determine whether the 2006 mortgage constitutes a fraudulent conveyance.

In their objections to the Report and Recommendation, the Kummerfelds contend that the restraining orders were invalid because they failed to comply with N.Y. C.P.L.R. § 5222(d) and (e), and therefore violated their due process rights.  In any case, they argue, the encumbrances on the Cape Cod property and their expenditures since 2001 did not violate the restraining orders.  These objections are without merit.

Under New York law, a judgment creditor may issue a restraining notice to be served on a judgment debtor pursuant to N.Y. C.P.L.R. § 5222(a).[11]  Where the debtor is a natural person, the judgment creditor must provide the debtor with notice of potentially exempt funds, the procedure for recovering such funds, and advise the debtor that he or she may wish to consult legal counsel.  See N.Y. C.P.L.R. § 5222(d) and (e).[12]  Once the

---

[11] In 2008, the New York legislature amended N.Y. C.P.L.R. § 5222 effective January 1, 2009.  Because the restraining notices and the motion for contempt under consideration were all filed prior to the amendment, all references herein are to the earlier provisions that took effect in 2000, unless otherwise indicated.

[12] N.Y. C.P.L.R. § 5222(d) provides the notice requirement and § 5222(e) provides the required content of the notice.  Section 5222(d) states, in relevant part:

>   [I]f a notice in the form prescribed in subdivision
>   (e) of this section has not been given to the judgment
>   debtor or obligor within a year before service of a
>   restraining notice, a copy of the restraining notice
>   together with the notice to judgment debtor or obligor
>   shall be mailed by first class mail or personally
>   delivered to each judgment debtor or obligor who is a
>   natural person within four days of the service of the
>   restraining notice.

N.Y. C.P.L.R. § 5222(d).

debtor has been served with a restraining notice, the debtor cannot "make or suffer any sale, assignment, transfer or interference with any property in which he or she has an interest, except upon direction of the sheriff or pursuant to an order of the court, until the judgment or order is satisfied or vacated."  N.Y. C.P.L.R. § 5222(b).  "[R]efusal or willful neglect to obey a restraining notice is punishable as contempt."  N.Y. C.P.L.R. § 5251.

The restraining notice served on KAI in February 2001 complied with all of the statutory requirements.  It was not necessary to serve KAI with a Notice to Judgment Debtor.  By the plain language of § 5222(d), judgment creditors are not required to serve such a notice on corporate defendants.  See Vinos Argentinos USA, Inc. v. Los Andes Imports, Inc., No. 91 Civ. 2587 (JSM), 1993 WL 465353, at *1 (S.D.N.Y. Nov. 8, 1993).  Likewise, the restraining notices served on the Kummerfelds in their individual capacities provided sufficient notice of the restrictions imposed by § 5222(b).  The notice served on Mr. Kummerfeld in August 2004 was valid because it included a Notice to Judgment Debtor pursuant to § 5222(d) and (e).[13]  It was

---

[13] While Cordius originally served the restraining notice on Mr. Kummerfeld without the Notice to Judgment Debtor, it quickly rectified this oversight.  Magistrate Judge Ellis found that the restraining notice served on Mr. Kummerfeld was invalid because it did not comply with the requirements of § 5222(d) and (e).  As explained below, however, Mr. Kummerfeld was not relieved of

effective from August 2004 until October 4, 2005, when the
judgment against him was vacated by the Second Circuit.  It
became effective again on January 25, 2008 when judgment was re-
entered against him.

With respect to the notice served on Ms. Kummerfeld in
February 2001, although it did not include a Notice to Judgment
Debtor, she nonetheless had effective notice of the restrictions
imposed by the restraining order.  As Magistrate Judge Ellis
concluded, there was no violation of Ms. Kummerfeld's due
process rights for failure to notify her of potentially exempt
property, which was the concern in Dreary v. Guardian Loan Co.,
534 F.Supp. 1178, 1185 (S.D.N.Y. 1982), that prompted the New
York legislature to enact the Notice to Judgment Debtor
requirement.  The cases where New York courts have refused to
enforce restraining orders for failure to serve a Notice to
Judgment Debtor pursuant to § 5222(d) and (e) are inapposite as
they generally pertain to turnover proceedings involving third-
party garnishees.  See, e.g., Kitson & Kitson v. City of
Yonkers, 835 N.Y.S.2d 670, 672 (N.Y. App. Div. 2007); Weinstein
v. Gitters, 462 N.Y.S.2d 553, 554-55 (N.Y. Sup. Ct. 1983);
Friedman v. Mayerhoff, 592 N.Y.S.2d 909 (N.Y.Civ.Ct. 1992);

---

his obligation to comply with the restraining notice just
because the notice of exemption from execution of limited
categories of income, such as social security benefits, was
received fourteen days later.

<u>Chemical Bank v. Flaherty</u>, 468 N.Y.S.2d 315, 316 (N.Y.Civ.Ct. 1983).  In this case, the restraining notice was served on Ms. Kummerfeld directly and not a third-party garnishee.  A § 5222(d) Notice to Judgment Debtor would have served no purpose because Cordius had not -- and still has not to this day -- seized any of Ms. Kummerfeld's property, divested her of any of her money, or garnished any of her income.  Ms. Kummerfeld has not argued, and could not, that any of the exemptions identified in the § 5222(d) and (e) notice apply to any of the efforts Cordius has made to enforce its judgments.[14]  Because Ms. Kummerfeld had effective notice of the restraining order served on her in February 2001, she, too, was subject to the clear and unambiguous restrictions imposed by § 5222(b).

Furthermore, Mr. and Ms. Kummerfeld cannot now argue in good faith that they would have complied with the restraining notices but for their non-receipt of a Notice to Judgment Debtor pursuant to § 5222(d) and (e).  If they had wished to challenge the restraining notices, Mr. and Ms. Kummerfeld should have

---

[14] N.Y. C.P.L.R. § 5222(e) lists the following as types of potential exemptions from the restraining order:  supplemental security income, (SSI);  social security;  public assistance (welfare);  spousal support, maintenance (alimony) or child support;  unemployment benefits;  disability benefits;  workers' compensation benefits;  public or private pensions;  veterans benefits;  ninety percent of wages or salary earned in the last sixty days;  twenty-five hundred dollars of any bank account containing statutorily exempt payments deposited within the last forty-five days;  railroad retirement;  and black lung benefits.

moved this Court to vacate or modify the notices.  See, e.g.,
Friedman, 592 N.Y.S.2d at 910-11 (vacating restraining notice
upon debtor's motion for failure to serve Notice to Judgment
Debtor).  A party may not simply ignore a court order if he or
she objects to it.  See United States v. Cutler, 58 F.3d 825,
832 (2d Cir. 1995) ("[A] party may not challenge a district
court's order by violating it. Instead, he must move to vacate
or modify the order, or seek relief in this Court.").

Regardless of the validity of the restraining notices
served on Mr. and Ms. Kummerfeld, they both may be held
personally liable for violations of the February 2001
restraining notice served on KAI.  Mr. and Ms. Kummerfeld
controlled KAI and its activities as its sole shareholders,
officers, and directors.  See Cordius Trust v. Kummerfeld, 99
Civ. 3200 (DLC), 2007 WL 2435156, at *1 (S.D.N.Y. Aug. 29,
2007).  Violations of a restraining notice by a corporation may
be imputed to its officers if the officers are in sole control
of the corporation and violate a restraining notice served on
them.  See Vinos Argentinos, 1993 WL 465353, at *1 (citing
Citibank, N.A. v. Anthony Lincoln-Mercury, Inc., 447 N.Y.S.2d
262, 263 (N.Y. App. Div. 1982)).

The Court finds that, given their utter disregard for the
restraining notices, the Kummerfelds have not "diligently
attempted to comply" with the restraining notices or this

Court's judgments "in a reasonable manner." Latino Officers, 558 F.3d at 164. The Kummerfelds' profligate spending and encumbering of the Cape Cod property -- their only remaining asset -- demonstrate their unwillingness to comply with the enforcement of this Court's judgments. Because there is substantial, clear, and convincing evidence of the Kummerfelds' violations of the restraining notices, as outlined above, Cordius has met its burden in showing that the Kummerfelds are in contempt of these notices.

3.   Remedies

Cordius requests that the Court exercise its civil contempt powers and its authority to enforce its judgments to provide the relief outlined above.[15] While contempt sanctions may be available under New York law for violations of certain orders issued to effectuate enforcement of a judgment, see, e.g., N.Y. C.P.L.R. § 5251, such sanctions are not typically used to coerce a judgment debtor to satisfy the money judgment itself. See

---

[15] The alternative sanctions recommended by Magistrate Judge Ellis are insufficient to provide the relief that Cordius seeks. See Paramedics, 369 F.3d at 658 (stating that the Court should consider the probable effectiveness of any suggested sanction in bringing about compliance). The production of additional documents from the Kummerfelds or an award of additional attorneys' fees will not coerce the Kummerfelds' compliance. Moreover, based on the Kummerfelds' history of efforts to evade enforcement of the existing judgments, a monetary fine or additional attorneys' fees are simply unlikely to be paid.

N.Y. C.P.L.R. § 5104.  Instead, the judgment creditor must rely on the enforcement mechanisms provided in Article 52 of the C.P.L.R.

Cordius has properly availed itself of these enforcement procedures.  It sought, and was granted, a writ of execution pursuant to Fed. R. Civ. P. 69 for the April 2000 judgment.  It also registered both the April 2000 and the January 2008 judgments with the District of Massachusetts, where the Cape Cod property is located, pursuant to 28 U.S.C. § 1963.  In addition, Cordius served restraining notices on the Kummerfelds and engaged in post-judgment discovery in an attempt to identify other assets available to satisfy the judgments.  Cordius' efforts to enforce the judgments, however, have been repeatedly thwarted by the Kummerfelds at every turn.  Given the circumstances of this case, and based on this Court's authority to effectuate enforcement of its judgments, the Court finds that it is appropriate to grant, in part, the relief requested by Cordius.

Specifically, the Court grants Cordius' request to order the Kummerfelds to quit-claim the Cape Cod property to Cordius.[16]

---

[16] Neither of these remedies will affect the interests of any third parties in the Cape Cod property.  The quit-claim deed will give Cordius an interest in the property equal to that held by the Kummerfelds and thus subject to the other encumbrances, including a tax lien by the Town of Brewster, the primary mortgage (for which the bank has initiated foreclosure

The Court also grants Cordius' request to declare that the Declaration of Homestead is fraudulent and shall order Ms. Kummerfeld to withdraw it.[17]  The Court, however, denies Cordius' request to order the Kummerfelds to pay Cordius monthly an amount equal to that of their payments on the first mortgage.[18] The Court also declines to declare the Brinitzer mortgage void as a fraudulent transfer at this juncture.  The Court will hold a separate hearing where all interested parties may be heard on this issue.

The Kummerfelds object that the relief requested by Cordius constitutes a "back-door" attempt to circumvent the laws and remedies of Massachusetts concerning real property in that state.  The Kummerfelds fail to cite any provision of Massachusetts law (or New York law for that matter) which would prevent this Court from granting the relief that Cordius requests.  Nor have the Kummerfelds pointed out any New York or Massachusetts enforcement mechanisms with which Cordius has

proceedings), and the Brinitzer mortgage.  Further, because Cordius' judgments total nearly $3 million, and the Cape Cod property is valued at $1.6 or $1.7 million, no future creditors are prejudiced by granting Cordius a quit-claim deed.

[17] The timing of an order to Mr. Kummerfeld to withdraw the Declaration of Homestead and to quit-claim the Cape Cod property to Cordius shall be addressed in a separate order in light of his filing for bankruptcy after the October 15, 2009 hearing.

[18] This request is moot because the Kummerfelds stopped making their mortgage payments and the bank has already initiated foreclosure proceedings.

failed to comply.  The Kummerfelds' principal argument is that
Cordius has been unable to execute on the Cape Cod property
because an appeal of the January 2008 judgment was pending.  Now
that the Second Circuit has affirmed that judgment, this
argument is moot.

This Court is the proper forum to provide these remedies to
Cordius.  The complexity of this case, including the history of
intransigence on the part of the Kummerfelds, would require
another court to invest substantial time and resources to
develop full familiarity with this matter.  Cordius has complied
with federal, New York, and Massachusetts procedures in its
almost decade-long quest to enforce the judgments, but has been
obstructed by the Kummerfelds each step of the way.  Cordius
would have to spend even more time and money were another court
to take up this matter.  It would be inequitable to force
Cordius to bear this burden.


CONCLUSION

For the foregoing reasons, Cordius' July 18, 2008 motion is
granted.  Mr. Kummerfeld is held in contempt for violating the
May 6, 2008 Discovery Order.  Mr. Kummerfeld, Ms. Kummerfeld,
and KAI are held in contempt for violating the restraining
notices.  The relief requested by Cordius is granted in part and

denied in part.  Additional orders to effectuate the relief

granted shall follow.


        SO ORDERED:

Dated:      October 23, 2009
            New York, New York


                                    DENISE COTE
                            United States District Judge